870 So.2d 130 (2003)
MERCY HOSPITAL, INC., Appellant,
v.
Barbara BAUMGARDNER, and Ethbert Baumgardner, and Anne M. Jones Valentine, Appellees.
Nos. 3D02-3095, 3D02-2686.
District Court of Appeal of Florida, Third District.
December 24, 2003.
Rehearing Denied April 5, 2004.
Stephens Lynn Klein Lacava Hoffman & Puya, and Marlene S. Reiss, and Robert M. Klein; Lewis Fishman, for appellant.
Podhurst Orseck Josefsberg Eaton Meadow Olin & Perwin, and Joel S. Perwin, for appellees.
William A. Bell; Parenti, Falk, Waas, Hernandez & Cortina, and Gail Leverett Parenti, for the Florida Hospital Association, as amicus curiae.
Before GERSTEN, GREEN, and FLETCHER, JJ.
*131 GERSTEN, J.
Mercy Hospital, Inc. ("Mercy Hospital") appeals an adverse summary judgment finding the hospital liable for a staff physician's failure to comply with a financial responsibility statute. Plaintiffs Barbara and Ethbert Baumgarder and Anne Valentine (hereafter collectively referred to as "the plaintiffs"), cross-appeal the dismissal of their negligence claims against the hospital. We affirm on the main appeal and the cross-appeal.
The plaintiffs obtained judgments against Dr. Cesare DiRocco ("Dr. DiRocco") after successfully pursuing separate lawsuits for malpractice. Dr. DiRocco had privileges to practice medicine at Mercy Hospital, where the malpractice occurred.
Thereafter, Dr. DiRocco filed for bankruptcy, and the plaintiffs were unable to recover on their judgments. The plaintiffs then brought separate actions against Mercy Hospital alleging strict liability under Florida's financial responsibility law, Section 458.320(2)(b), Florida Statutes (2002), and negligence for failure to ensure that staff physician Dr. DiRocco complied with the statute.
Mercy Hospital moved to dismiss both complaints, and the plaintiffs filed motions for summary judgment on all claims. The trial court granted the plaintiffs' motions for summary judgment on the strict liability claims and entered individual judgments of $250,000 each for the plaintiffs. Mercy Hospital appeals the adverse summary judgment. The plaintiffs cross-appeal the dismissal of their negligence claims.
Section 458.320(2) requires physicians to comply with one of three financial responsibility options in order to obtain hospital staff privileges. A physician must have coverage in the amount of $250,000 per claim, by either establishing an escrow account, acquiring professional liability insurance, or maintaining a letter of credit. See § 458.320(2), Fla. Stat. (2002). Alternatively, a physician is exempt from the requirements of Section 458.320(2) if he or she agrees to pay any medical-malpractice judgment creditor $250,000 of any judgment, informs patients the doctor does not carry medical malpractice insurance, and provides written notification to the Florida Department of Health demonstrating compliance with the statute. See § 458.320(5)(g), Fla. Stat. (2002).
Mercy Hospital argues the trial court erred in granting summary judgment for the plaintiffs, contending Section 458.320(2) does not impose liability upon a hospital to ensure a physician's compliance. We disagree for the reasons expressed by our sister districts in Robert v. Paschall, 767 So.2d 1227 (Fla. 5th DCA 2000), review denied, 786 So.2d 1187 (Fla. 2001), and Baker v. Tenet Healthsystem Hosp., Inc. 780 So.2d 170 (Fla. 2d DCA 2001).
As noted in Robert v. Paschall, 767 So.2d 1227, 1228 (Fla. 5th DCA 2000): "The obvious intent of the legislature [in enacting Section 458.320(2) ] was to make sure that a person injured by the medical malpractice of a doctor with staff privileges would be able to ultimately recover at least $250,000 of compensable damages. We read section 458.320(2)(b) as imposing a statutory duty on the hospital to assure the financial responsibility of its staff-privileged physicians who use the hospital for medical treatment and procedures." See also Baker v. Tenet Healthsystem Hosp., Inc. 780 So.2d 170 (Fla. 2d DCA 2001)(hospital has a statutory duty to assure staff-privileged physicians are financially responsible).
We agree with the well-reasoned decisions of the Fifth and Second Districts. The statute mandates financial responsibility as a condition to maintaining staff privileges *132 and imposes a duty on the hospital to ensure compliance. Accordingly, we affirm on the main appeal. Finding no error in the trial court's well reasoned decision to dismiss the negligence claims, we affirm on the cross-appeal as well.
Affirmed.
FLETCHER, J., concurs.
GREEN, J. (dissenting).
Because the legislature has not expressly provided, or evidenced any intent to provide, a private cause of action against a hospital for a staff physician's failure to comply with a licensing statute, I must respectfully dissent.
Chapter 458 is regulatory and its specified legislative purpose is "to ensure that every physician practicing in this state meets minimum requirements for safe practice." § 458.301, Fla. Stat. (1999). Physicians who fall below the minimum standards "shall be prohibited from practicing in this state." Id. To that end, Chapter 458 is a licensing statute.
As a condition of licensing, a physician is required to demonstrate a financial ability to pay medical malpractice claims. § 458.320(1), Fla. Stat. (1999).[1] As a continuing condition of hospital staff privileges, a physician is also required to establish financial responsibility by:
(a) Establishing and maintaining an escrow account consisting of cash or assets eligible for deposit in accordance with s. 625.52 in the per claim amounts specified in paragraph (b).
(b) Obtaining and maintaining professional liability coverage in an amount not less than $250,000 per claim, with a minimum annual aggregate of not less than $750,000 from an authorized insurer as defined under s. 624.09, from a surplus lines insurer as defined under s. 626.914(2), from a risk retention group as defined under s. 627.942, from the Joint Underwriting Association established under s. 627.351(4), through a plan of self-insurance as provided in s. 627.357, or through a plan of self-insurance which meets the conditions specified for satisfying financial responsibility in s. 766.110.
(c) Obtaining and maintaining an unexpired irrevocable letter of credit, established pursuant to chapter 675, in an amount not less than $250,000 per claim, with a minimum aggregate availability of credit of not less than $750,000. The letter of credit shall be payable to the physician as beneficiary upon presentment of a final judgment indicating liability and awarding damages to be paid by the physician or upon presentment of a settlement agreement signed by all parties to such agreement when such final judgment or settlement is a result of a claim arising out of the rendering of, or the failure to render, medical care and services. Such letter of credit shall be nonassignable and nontransferable. Such letter of credit shall be issued by any bank or savings association organized and existing under the laws of this state or any bank or savings association organized under the laws of the United States that has its principal place of business in this state or has a branch office which is authorized under the laws of this state or of the United States to receive deposits in this state. § 458.320(2)(a),(b),(c). A staff physician's coverage is inclusive of the coverage provided for licensure. Id.

*133 Moreover, this financial responsibility statute expressly provides that physicians need not comply with the enumerated financial requirements if they agree to certain conditions. § 458.320(5). Specifically,
(5) The requirements of subsections (1)[and] (2) ... shall not apply to:

* * *
(g) Any person holding an active license under this chapter who agrees to meet all of the following criteria:
1. Upon the entry of an adverse final judgment arising from a medical malpractice arbitration award, from a claim of medical malpractice either in contract or tort, or from noncompliance with the terms of a settlement agreement arising from a claim of medical malpractice either in contract or tort, the licensee shall pay the judgment creditor the lesser of the entire amount of the judgment with all accrued interest or either $100,000, if the physician is licensed pursuant to this chapter but does not maintain hospital staff privileges, or $250,000, if the physician is licensed pursuant to this chapter and maintains hospital staff privileges, within 60 days after the date such judgment became final and subject to execution, unless otherwise mutually agreed to in writing by the parties. Such adverse final judgment shall include any cross-claim, counterclaim, or claim for indemnity or contribution arising from the claim of medical malpractice. Upon notification of the existence of an unsatisfied judgment or payment pursuant to this subparagraph, the department shall notify the licensee by certified mail that he or she shall be subject to disciplinary action unless, within 30 days from the date of mailing, he or she either:
a. Shows proof that the unsatisfied judgment has been paid in the amount specified in this subparagraph; or
b. Furnishes the department with a copy of a timely filed notice of appeal and either:
(I) A copy of a supersedeas bond properly posted in the amount required by law; or
(II) An order from a court of competent jurisdiction staying execution on the final judgment pending disposition of the appeal.
§ 458.320(5)(g)(1). Failure to comply with the conditions of subsection 1 results in an emergency order of suspension which may be followed by disciplinary action. § 458.320(5)(g)(2),(3),(4).[2]
*134 Conspicuously absent from the statute is any language providing a third-party injured patient with a private cause of action against a hospital for a staff physician's breach of statute. Without such language, or at a bare minimum, clear legislative intent, courts have repeatedly declined to infer the existence of a private cause of action to a regulatory statute. See, e.g., Murthy v. N. Sinha Corp., 644 So.2d 983, 986 (Fla.1994)(holding that regulatory statutes governing construction industry did not create private cause of action absent evidence in language or legislative history of intent to create private cause of action). See also Fla. Physicians Union v. United Healthcare of Fla., Inc., 837 So.2d 1133, 1137 (Fla. 5th DCA 2003)("The courts of this state have long been reluctant to find the legislature intended private parties to have causes of action to enforce statutes... without strong indication that was the legislature's intent."); Moyant v. Beattie, 561 So.2d 1319, 1320 (Fla. 4th DCA 1990)("In general, a statute that does not purport to establish civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability."). Because there is no statutory language creating a private cause of action, or indication that the legislature ever intended to create a private cause of action, we cannot create one by judicial fiat.
For that reason, I believe that Robert v. Paschall, 767 So.2d 1227 (Fla. 5th DCA 2000) and Baker v. Tenet Healthsystem Hosps., Inc., 780 So.2d 170 (Fla. 2d DCA 2001) were wrongly decided. In Robert, the Fifth District held that a hospital was liable, up to a limit of $250,000, for a staff-privileged physician's failure to comply with the financial responsibility statute. Robert, 767 So.2d at 1228. The court held that this cause of action against the hospital did not arise, however, until a judgment had been entered against a staff physician which was not satisfied. Id. at 1228-29. In inferring this private cause of action, the Robert court stated:
We believe this holding is compatible with the legislative intent to make sure that plaintiffs, such as the Roberts, are compensated assuming they are so entitled, at least up to $250,000.
Id. at 1229. Similarly, the Second District, relying on Robert, affirmed a dismissal without prejudice of a plaintiff's claim against a hospital under section 458.320, finding the claim premature because the plaintiff had yet to establish liability on the part of the staff physician. Baker, 780 So.2d at 171.
Prior to these cases, there was nothing in the common law to suggest that a hospital had a duty to ensure that its staff physicians were financially responsible. As the First District has said:
[N]o case, either in Florida or elsewhere, has recognized the tort of negligent selection of a financially "incompetent" physician.... It is true that the corporate negligence doctrine is premised on the notion that it is foreseeable that a hospital's failure to properly investigate an applicant for staff privileges would present a foreseeable risk of harm to the hospital's patients.... No concurrent public reliance on a hospital's monitoring of a staff physician's malpractice judgment-paying skills has been noted in the cases.
Beam v. Univ. Hosp. Bldg., Inc., 486 So.2d 672, 673 (Fla. 1st DCA 1986), (citations omitted).
*135 We cannot assume that the legislature intended to create a cause of action and abrogate the common law without clear, unambiguous and affirmative language to that effect. See Raisen v. Raisen, 379 So.2d 352, 353-54 (Fla.1979)(stating that, as a general rule, common law should be changed through legislative enactment, not judicial decisions); Assoc. for Retarded CitizensVolusia, Inc. v. Fletcher, 741 So.2d 520, 525 (Fla. 5th DCA 1999)("Had it been the intent of the legislature to abrogate the well-settled common law rule ... the legislature no doubt would have specifically said so."). There is no such language in section 458.320. Thus, I believe that the Second and Fifth Districts overstepped their authority in creating a private cause of action where one was not expressly provided for by the legislature and we should decline to follow their lead in this case. I would therefore reverse and certify conflict with the holdings from these Districts.
NOTES
[1] The statute provides that financial ability can be demonstrated in various ways: 1) The establishment and maintenance of an escrow account; 2) professional liability coverage or 3) obtaining and maintaining an unexpired, irrevocable letter of credit. § 458.320(1)(a),(b),(c).
[2] Specifically, the statute provides:

2. The Department of Health shall issue an emergency order suspending the license of any licensee who, after 30 days following receipt of a notice from the Department of Health, has failed to: satisfy a medical malpractice claim against him or her; furnish the Department of Health a copy of a timely filed notice of appeal; furnish the Department of Health a copy of a supersedeas bond properly posted in the amount required by law; or furnish the Department of Health an order from a court of competent jurisdiction staying execution on the final judgment pending disposition of the appeal.
3. Upon the next meeting of the probable cause panel of the board following 30 days after the date of mailing the notice of disciplinary action to the licensee, the panel shall make a determination of whether probable cause exists to take disciplinary action against the licensee pursuant to subparagraph 1.
4. If the board determines that the factual requirements of subparagraph 1. are met, it shall take disciplinary action as it deems appropriate against the licensee. Such disciplinary action shall include, at a minimum, probation of the license with the restriction that the licensee must make payments to the judgment creditor on a schedule determined by the board to be reasonable and within the financial capability of the physician. Notwithstanding any other disciplinary penalty imposed, the disciplinary penalty may include suspension of the license for a period not to exceed 5 year. In the event that an agreement to satisfy a judgment has been met, the board shall remove any restriction on the license.