895 So.2d 484 (2005)
PLANTATION GENERAL HOSPITAL LIMITED PARTNERSHIP d/b/a Columbia Plantation General Hospital, Appellant,
v.
Stuart HOROWITZ, Personal Representative of the Estate of Lena Horowitz, Appellee.
No. 4D03-3873.
District Court of Appeal of Florida, Fourth District.
February 9, 2005.
Hal B. Anderson and Kevin M. Vannatta of Billing, Cochran, Heath, Lyles, Mauro & Anderson, P.A., Fort Lauderdale, for appellant.
Gail Leverett Parenti of Parenti, Falk, Waas, Hernandez & Cortina, P.A., Coral Gables, and William A. Bell, General Counsel, Tallahassee, for Amicus Curiae Florida Hospital Association.
H. Mark Purdy of Purdy & Flynn, P.A., Fort Lauderdale, for appellee.
Joel S. Perwin of Podhurst Orseck, P.A., Miami, for Amicus Curiae Academy of Florida Trial Lawyers.

*485 ON MOTION FOR REHEARING

FARMER, C.J.
In moving for rehearing and clarification, plaintiff asserts that he had no intention at oral argument to limit his theory of recovery to the theory of strict liability, that at all times he relied on both strict liability and negligence. He also points out that, in presenting the motion for summary judgment, the issue had been narrowed as a result of the stipulation of the parties as to the operative facts. The parties had reduced the issue to whether the holdings in Robert v. Paschall, 767 So.2d 1227 (Fla. 5th DCA 2000), and Baker v. Tenet Healthsystem Hospitals Inc., 780 So.2d 170 (Fla. 2d DCA 2001), would apply to this case, where the underlying malpractice occurred in the physician's office rather than the hospital. In response to the motion for rehearing and clarification, defendant states that if this court should permit plaintiff to withdraw the concession he made at oral argument it would have no objection if the court were to adopt the position of the concurring opinion. Having considered the matter, we grant plaintiff's motion for rehearing and clarification, withdraw our previous opinion and replace it with the following.
In a final summary judgment, a hospital (defendant) was ordered to pay damages to plaintiff as a result of an unsatisfied money judgment against one of its staff physicians for malpractice in treating a patient. The hospital had granted the physician staff privileges but had failed to supervise his compliance with a financial responsibility law regarding medical malpractice judgments.[1] Plaintiff holds an unsatisfied judgment and has since sued the hospital for payment of the judgment. His suit was based on the failure of the hospital *486 to supervise its physician's compliance with the financial responsibility obligations under section 458.320. The trial court agreed with plaintiff and entered judgment accordingly. We reverse.
In the action below, both parties moved for summary judgment and the case was presented to the trial judge on stipulated facts. Dr. Derek Jhagroo was a physician licensed to practice medicine in Florida. Defendant had granted him staff privileges at its hospital. The patient went to the physician's private office for examination and treatment of an infected right thumb. Three days later, the physician admitted her to Plantation General Hospital where her right thumb was surgically removed.
As a result she obtained a medical malpractice judgment in the amount of $859,200 against the physician. Although he enjoyed privileges at the hospital, the physician failed to maintain medical malpractice insurance or otherwise comply with the requirements of the physician responsibility law. Her writ of execution was returned unsatisfied. The judgment against the physician is uncollectible, and nothing has been paid on the judgment debt. Plaintiff then brought this suit against the hospital to collect on the unsatisfied judgment.
Plaintiff bases his claim for money damages on the theory that a private cause of action can be inferred from what is obviously a regulatory statute. In Murthy v. N. Sinha Corp., 644 So.2d 983, 985 (Fla.1994), there is a glimmer of an opening to this money door stating:
"we agree that legislative intent, rather than the duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." [e.s.]
Id. (holding that regulatory statutes governing construction industry did not create private cause of action in the absence of evidence in text or legislative history of intent to create private cause of action). In isolation, we suppose, that single sentence might be read to authorize judges to add private causes of action for damages to regulatory statutes whose text fails to provide for them. Later in the same opinion, however, the court made clear:
"we decline to infer any civil liability as there is no evidence in the language or the legislative history of chapter 489 of a legislative intent to create a private remedy against a qualifying agent." [e.s.]
644 So.2d at 986.
Murthy's holding is silent about the supreme court's previous admonition that judges lack the power:
"to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power."
Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). Murthy's application of its suggestion of a possible legitimacy of inferring private rights of action, as informed by Holly really stands for the proposition that the text of the statutory scheme itself must betray a legislative purpose to authorize civil damages actions to redress violations of regulatory law.
Murthy's term, legislative intent, is thus better comprehended as a shorthand reference to the ordinary tools for discerning statutory meaning: text, context, and purpose. Given the holding in Holly v. Auld, it is very unlikely[2] that the court conceived *487 of Murthy as an invitation to judges to comb through committee hearings, staff commentaries or floor debates for isolated comments favoring an implication of a right of private parties to sue for damages from violations of regulatory law when the actual statutory text lacks such authority.
But, yes, Murthy has been misunderstood. Three courts have justified finding a private right of damages actions against hospitals in section 458.320. Baker v. Tenet Healthsystem Hosps. Inc., 780 So.2d 170 (Fla. 2d DCA 2001); Mercy Hosp. Inc. v. Baumgardner, 870 So.2d 130, 131 (Fla. 3d DCA 2003); and Robert v. Paschall, 767 So.2d 1227, 1228 (Fla. 5th DCA 2000). These courts reached their result by the following reasoning:
"The obvious intent of the legislature [in enacting Section 458.320(2)] was to make sure that a person injured by the medical malpractice of a doctor with staff privileges would be able to ultimately recover at least $250,000 of compensable damages. We read section 458.320(2)(b) as imposing a statutory duty on the hospital to assure the financial responsibility of its staff-privileged physicians who use the hospital for medical treatment and procedures."
Baumgardner, 870 So.2d at 131 (quoting Robert, 767 So.2d at 1228). But as the then Professor Easterbrook has explained regarding this same reasoning:
"A legislature that seeks to achieve Goal X can do so in one of two ways. First, it can identify the goal and instruct courts or agencies to design rules to achieve the goal. In that event, the subsequent selection of rules implements the actual legislative decision, even if the rules are not what the legislature would have selected itself. The second approach is for the legislature to pick the rules. It pursues Goal X by Rule Y. The selection of Y is a measure of what Goal X was worth to the legislature, of how best to achieve X, and of where to stop in pursuit of X. Like any other rule, Y is bound to be imprecise, to be over- and under-inclusive. This is not a good reason for a court, observing the inevitable imprecision, to add to or subtract from Rule Y on the argument that, by doing so, it can get more of Goal X. The judicial selection of means to pursue X displaces and directly overrides the legislative selection of ways to obtain X. It denies to legislatures the choice of creating or withholding gapfilling authority. The way to preserve the initial choice is for judges to put the statute down once it becomes clear that the legislature has selected rules as well as identified goals."
Frank H. Easterbrook, Statutes' Domains, 50 U. CHI. L.REV. 533, 546-47 (1983).
From this cogent clarification of the boundary between legislative and judicial powers, the flaws in the logic of Baker, Baumgardner and Robert become apparent. The essential aim of section 458.320 is to have physicians furnish a form of financial security to satisfy malpractice judgments against them. But the Legislature has plainly laid out in the statute the only remedies it conceived for those occasions when physicians fail to provide the required security. None of the statute's remedies include sanctions against a privileges-granting hospital. Nothing in any part of the statute  or, for that matter, the chapter and the entire body of Florida Statutes  suggests a purpose to make hospitals liable to pay staff physicians' malpractice judgments.
Accepting the Legislature's own specification of the remedies for complying with the goal of the statute, there is no theory of language or law by which one could reasonably infer a purpose to have money judgments against a hospital for a doctor's unsatisfied judgment. Indeed, if one were inclined to infer a remedy not specified in *488 the text, it might more plausibly be something like injunctive relief against the hospital to enforce the statutory duty of policing compliance with section 458.320.
We are unable to find any indication anywhere in the entire statutory scheme that a money damages remedy against a hospital is within any legislative purpose discernible from the text adopted. From the statute itself, we are unable to find any legal justification for any kind of money damages remedy against the hospital under any theory. The Legislature did not deem the goal of security for malpractice judgments so critical that it would make hospitals become virtual insurers for a doctor's security obligation.
We therefore make our conclusion explicit. The Legislature has implied no damages remedy of any kind under section 458.320, whether it be based on strict liability, negligence, suretyship, contract, contribution, indemnification, criminal punishment, or any other legal theory the creative minds of lawyers can discern. It follows that our decision today is in direct conflict with Baker, Baumgardner and Robert.
Reversed.
STEVENSON and GROSS, JJ., concur.
NOTES
[1] See § 458.320(2), Fla. Stat. (2004) (licensed physicians required to establish financial responsibility to satisfy malpractice judgments by specified methods).
[2] See Puryear v. State, 810 So.2d 901, 905 (Fla.2002) ("this Court does not intentionally overrule itself sub silentio.").