# Supreme Court of Florida

————————

No. SC17-829

————————

**D.H., et al.,**
Petitioners,

vs.

**ADEPT COMMUNITY SERVICES, INC., et al.,**
Respondents.

November 1, 2018

LABARGA, J.

Petitioners D.H. and L.H. ("the Twins"), by and through their maternal grandparents ("the Grandparents"), seek review of the decision of the Second District Court of Appeal in *D.H. v. Adept Community Services, Inc.*, 217 So. 3d 1072 (Fla. 2d DCA 2017).[1] The Twins allege Respondents Adept Community Services, Inc. ("Adept"), and B.E.A.R.R., Inc. ("B.E.A.R.R."), negligently failed to protect the Twins from suffering physical, mental, and emotional injuries at the hands of their mother ("the Mother"). 217 So. 3d at 1076. The Circuit Court for

_____

1. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

the Sixth Judicial Circuit in and for Pinellas County held the Twins' claims were barred by the four-year statute of limitations applicable to negligence claims, and granted summary judgment for the Respondents. *Id.* at 1075. The Twins appealed to the Second District, which affirmed the trial court's ruling. *Id.* For the reasons explained below, we quash the decision of the Second District and remand for further proceedings.

**Facts**

Shortly after the Mother was born, she was diagnosed with noncongenital cerebral palsy and seizure disorder. Desiring to live on her own, she moved out of the Grandparents' home when she was twenty years old. The Mother hired Adept and B.E.A.R.R. to provide support services, including helping the Mother to hire a live-in aide to provide around-the-clock assistance.

The Mother became pregnant in late 2004, and in September 2005 she gave birth to the Twins. She had moved back into the Grandparents' home during her pregnancy but was determined to live on her own again after the Twins were born. To facilitate this, the Mother hired Adept and B.E.A.R.R. to provide support services as before. Worried that the Mother would not be able to safely care for and raise the Twins because of her disability, the Grandparents arranged a meeting of the support workers from Adept and B.E.A.R.R. during which the Grandparents discussed their concerns. The parties dispute what transpired at this meeting: The

Twins allege that the Grandparents told the support workers, "If anything happens to these little boys, all of you in this room are responsible." The Twins further allege the support workers nodded and promised to "ensure there were eyes looking out for" the Twins. Adept and B.E.A.R.R., however, deny that their employees undertook any such obligation. On October 11, 2005, the Mother and the Twins moved into an apartment together with the live-in aide.

On April 11, 2006, the Mother fired the live-in aide after an argument over the air conditioning in their shared apartment. Later that day, pursuant to an anonymous complaint, a petition to shelter the Twins was filed with the circuit court and the sheriff's office removed them from the Mother's custody. The Twins were taken to the Grandparents' home the next day.

A dependency petition for the Twins was also filed on April 11, 2006, and the statewide Guardian Ad Litem Program ("GALP") was appointed to represent the Twins in the dependency case.[2] The Twins were adjudicated dependent on May 16, 2006, and placed in the "temporary care, custody, and control" of the

---

2. An individual guardian ad litem was later named to represent the Twins in this case and was discharged in July 2006. After the individual guardian ad litem was discharged, the GALP continued to represent the Twins. Neither the parties nor the Second District assign any legal significance to this distinction. *See* 217 So. 3d at 1075 n.1. For simplicity, except where it is necessary to refer to the GALP and individual guardian ad litem separately, we use the term "guardian ad litem" to refer both to the individual guardian ad litem and the GALP.

Grandparents. 217 So. 3d at 1075 (quoting adjudication of dependency). Three days later, the Department of Children and Families completed a comprehensive health assessment for each Twin "noting developmental delays and anxiety problems due to abuse and neglect." *Id.* at 1076. On March 15, 2007, the Twins were diagnosed with sensory disorder, a condition attributed to their past abuse and neglect. On April 13, 2007, the protective supervision was terminated, the GALP was discharged, and the Grandparents were made the Twins' permanent guardians.

On November 22, 2010, the Grandparents filed a claim as the "next friends and permanent guardians" of the Twins against Adept and B.E.A.R.R. *Id.* (quoting complaint). The Twins alleged Adept and B.E.A.R.R. had negligently failed to prevent them from being injured by their Mother's maltreatment. *Id.* B.E.A.R.R. moved for summary judgment,[3] contending the Grandparents could have sued on the Twins' behalf at any time after they learned the elements of the Twins' claims had been satisfied, and that the Grandparents learned this no later than May 2006. *Id.* Therefore, the Respondents argued, the Twins' claims were barred by the applicable four-year statute of limitations. *Id.* The Twins contended the Grandparents were unaware of any cognizable injury before receiving the Twins' sensory disorder diagnosis on March 15, 2007. The circuit court initially denied

---

3. Adept later joined B.E.A.R.R.'s motion. 217 So. 3d at 1076.

the motion, but granted it after Adept and B.E.A.R.R. moved for reconsideration. *Id.*

The Twins appealed to the Second District, arguing summary judgment was improper because the record did not conclusively establish the date on which the Grandparents knew or should have known of the Twins' injury. *Id.* at 1077. The Twins also argued the record did not establish whether the statute of limitations was tolled at any point before the Grandparents were appointed the Twins' permanent guardians. *Id.*

The Second District rejected the "knew or should have known" rule of accrual, concluding it was "an expression of the delayed discovery doctrine." 217 So. 3d at 1078. The Second District reasoned that such a rule would be barred by our decision in *Davis v. Monahan*.[4] *See* 217 So. 2d at 1078. Absent an applicable statutory exception, the Second District concluded, a claim "accrues when the last element constituting the cause of action occurs." 217 So. 3d at 1077 (quoting § 95.031(1), Fla. Stat. (2006)). Therefore, the Second District held the Twins' claims accrued—and the statute of limitations began to run—at the time they suffered a cognizable injury, which could not have occurred after April 11, 2006, the date they were removed from the Mother's custody. *Id.* at 1078-79.

---

4. 832 So. 2d 708 (Fla. 2002).

The Second District also addressed whether the statute of limitations was tolled between April 11, 2006—the latest date the Second District determined the Twins' claims could have accrued—and April 13, 2007, when the Grandparents were appointed the Twins' permanent guardians. *Id.* at 1082-84. Florida law tolls the statute of limitations for a minor's tort claim when the child lacks a parent, guardian, or guardian ad litem who is not adverse to the child and has not been adjudicated to be incapacitated. § 95.051(1)(h), Fla. Stat. (2006).[5] The Twins argued their claims were based on the Mother's inability to care for them, and that her interests were therefore adverse to theirs both with respect to the Twins' tort claims and in light of the dependency case which was pending during that period. 217 So. 3d at 1083. The Twins further contended the Grandparents were only temporary custodians of the Twins during the relevant period rather than permanent guardians with plenary powers. *Id.* Finally, the Twins argued that, although a guardian ad litem had been appointed for purposes of the dependency proceeding, that guardian ad litem did not know of the factual basis for their claims against Adept and B.E.A.R.R. *Id.*

The Second District held the guardian ad litem's lack of knowledge of the Twins' injury was irrelevant to the question of tolling because section 95.051(1)(h)

---

5. The version of the statute now in effect contains identical language in a different subsection. *See* § 95.051(1)(i), Fla. Stat. (2018).

does not allow for tolling on the basis that a parent, guardian, or guardian ad litem is unaware of a minor's injury. *Id.* To hold that such a lack of knowledge is a basis for tolling, the Second District reasoned, a court "would have to add the words 'or does not know of the minor's injuries' to the statutory list of circumstances that toll the limitations period." *Id.* The district court declined to perform this "policymaking function" which "belongs to a legislature." *Id.* The Second District explained that, absent certain exceptions not relevant to this case, the plain language of the tolling statute provides that "the limitations period on a minor's cause of action is not tolled when a guardian ad litem exists." *Id.* Because the Twins were represented by a guardian ad litem in their dependency case, the Second District held, the tolling provision did not apply and the Twins' claims were barred by the statute of limitations. *Id.* at 1084.

Then-Chief Judge Villanti concurred specially in the district court's decision, explaining that, although the Twins were represented by a guardian ad litem in the dependency case,

> more is required to avoid the tolling statute than simply the existence of an entity called a "guardian ad litem." The guardian ad litem in this case was appointed by the dependency court to represent the best interests of the twins *in the dependency case*. . . . To hold that the mere existence of a guardian ad litem—even one wholly bereft of the legal authority necessary to bring the civil action in question—is sufficient to avoid the tolling statute is to elevate form over substance at the expense of the very persons the statute is intended to protect.

*Id.* (Villanti, C.J., concurring specially).  Judge Villanti concluded it was fundamental error to grant summary judgment without resolving whether the guardian ad litem was empowered to sue on the Twins' behalf and whether a guardian ad litem not empowered to sue could nevertheless defeat the tolling statute.  *Id.*  Judge Villanti acknowledged, however, that the Twins did not argue on appeal that tolling was available on the basis that the guardian ad litem lacked authority to sue on their behalf.  *Id.* at 1085.  Therefore, Judge Villanti "reluctantly" concurred in the Second District's conclusion that this issue was abandoned.  *Id.*; *see also* 217 So. 3d at 1083 n.5 (majority opinion, declining to address this "difficult question of first impression" because it was not properly raised and briefed on appeal).

The Twins sought discretionary review from this Court on the basis that the Second District's decision conflicts with *Drake v. Island Community Church, Inc.*, 462 So. 2d 1142 (Fla. 3d DCA 1984); *S.A.P. v. State Department of Health & Rehabilitative Services*, 704 So. 2d 583 (Fla. 1st DCA 1997) *approved*, 835 So. 2d 1091 (Fla. 2002); and *Doe No. 3 v. Nur-Ul-Islam Academy, Inc.*, 217 So. 3d 85 (Fla. 4th DCA 2017).  We accepted jurisdiction and granted oral argument.  Florida's statewide Guardian Ad Litem Program and Florida's Children First, Inc., filed amicus briefs in support of the Twins.

The Twins raise four issues for our review, one of which we find dispositive: The Twins argue that the statute of limitations was tolled because the guardian ad litem had no power to sue on their behalf, and that the fundamental error doctrine allows the Court to address this issue despite their failure to properly present it to the district court. As explained below, we conclude the Second District erred in determining the Twins' claims were not tolled pursuant to 95.051(1)(h), Florida Statutes (2006).

**Standard of Review**

"A trial court's ruling on a motion for summary judgment posing a pure question of law is subject to de novo review." *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). "The party moving for summary judgment bears the burden of establishing *irrefutably* that the nonmoving party cannot prevail." *Bryson v. Branch Banking & Tr. Co.*, 75 So. 3d 783, 785 (Fla. 2d DCA 2011). The application of section 95.051(1)(h) to this case is a question of statutory interpretation, which we review de novo. *Borden v. East-European Ins. Co.*, 921 So. 2d 587, 591 (Fla. 2006). This Court interprets statutes according to their plain and obvious meaning unless that interpretation leads to a result which is unreasonable or contrary to the intent of the Legislature. *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005).

**Analysis**

Subject to certain exceptions not relevant here, Florida law provides that a statute of limitations is tolled by "[t]he minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue." § 95.051(1)(h), Fla. Stat. (2006). Children ordinarily cannot sue on their own behalf. *See Kingsley v. Kingsley*, 623 So. 2d 780, 783 (Fla. 5th DCA 1993) ("Courts historically have recognized that unemancipated minors do not have the legal capacity to initiate legal proceedings in their own names."). Instead, children's claims can only be brought by and through "a guardian or other like fiduciary," or in the absence of any such representative "by next friend or by a guardian ad litem." Fla. R. Civ. P. 1.210(b). By tolling the statute of limitations during any period in which a child lacks a person who has a duty to act in the best interests of that child, section 95.051(1)(h) protects children from the danger that their claims will be time-barred before they can be brought.

In terms of the present case, this subsection tolls the statute of limitations during any period the Twins lacked a parent, guardian, or guardian ad litem; or during any period where those persons had an interest adverse to the Twins. The parties do not dispute that the Mother, as the person who maltreated the Twins, had

- 10 -

an interest adverse to the Twins with respect to the present case. Therefore, the

first requirement for tolling under section 95.051(1)(h) is satisfied: there was a

period of time—from the time the Twins were first injured by the Mother's

maltreatment until the present day—when the Twins lacked a parent whose

interests were not adverse to their own with respect to their claims in this case.[6]

Because the existence of any one of the three classes of individual named in the

statute is sufficient to defeat tolling, we must also examine whether there was any

period of time during which the Twins lacked a guardian or guardian ad litem who

was competent to sue and had no adverse interest.

### I. Guardian

In order for statutory tolling to apply to a minor's claim, Florida law requires

that there be a "period of time in which a . . . guardian . . . does not exist, has an

interest adverse to the minor . . . or is adjudicated to be incapacitated to sue."

§ 95.051(1)(h), Fla. Stat. (2006). Guardianships "are governed by a

comprehensive statutory code and set of procedural rules." *Hayes v. Guardianship

of Thompson*, 952 So. 2d 498, 505 (Fla. 2006).[7] Florida guardianship law defines

---

6. Adept and B.E.A.R.R. do not argue that the Twins' father—whose whereabouts are unknown—prevents section 95.051(1)(h) from tolling the Twins' claims. This argument was not raised before this Court, and it is therefore barred.

7. Although the Twins were placed in the Grandparents' temporary custody as a result of a dependency petition under chapter 39, Florida Statutes (2006), it is worthy of note that chapter 751, Florida Statutes (2006), allows the extended

"guardian" as "a person who has been appointed by the court to act on behalf of a ward's person or property, or both." § 744.102(9), Fla. Stat. (2006).[8] The statute also distinguishes between a "Limited guardian," whose powers are limited to those specifically designated by court order, *id.* § 744.102(9)(a), and a "Plenary guardian," who exercises "all delegable rights and powers of the ward." *Id.* § 744.102(9)(b). Guardians are appointed by court order, and that order must not only state whether the guardianship is plenary or limited but also "the specific powers and duties of the guardian." § 744.344(1), Fla. Stat. (2006).

The record demonstrates that the order placing the Twins in the Grandparents' temporary custody did not create a guardianship. Instead, it temporarily placed the dependent Twins in the Grandparents' custody to ensure they would be well cared for until the court determined what further action was

---

family of a minor to petition a court to award temporary custody. § 751.03, Fla. Stat. (2006). This chapter also requires a court to determine by clear and convincing evidence "that the parent has abused, abandoned, or neglected the child, as defined in chapter 39," if the parent objects to the granting of temporary custody. § 751.05(3), Fla. Stat. (2006). The purpose of this procedure is to enable temporary custodians of minors to consent to medical and dental care for them, secure records necessary for their care, enroll them in school, or do anything else necessary for their care. § 751.01(3), Fla. Stat. (2006). Orders granting temporary custody of a child to members of the child's extended family do not inherently appoint that family member as the child's guardian. *See generally* § 751.05, Fla. Stat. (2006).

8. The version of the statute in effect today contains identical language. *See* § 744.102(9), Fla. Stat. (2018).

appropriate.  The court's order states, "The children shall be placed in the temporary care, custody, and control of [the Grandparents]," requires the Mother to pay child support to the Grandparents, and gives the Grandparents "the right to authorize any necessary and emergency medical treatment and ordinary medical, dental, psychiatric and psychological care for the [Twins]."  It does not authorize the Grandparents to exercise any other powers with respect to the Twins and refers to the Grandparents as "custodians," not guardians; nor does it refer to the many substantive or procedural aspects of Florida guardianship law.  We therefore conclude the Twins lacked a guardian within the meaning of section 95.051(1)(h), Florida Statutes (2006), until the Grandparents were appointed as their permanent guardians on April 13, 2007.

*II. Guardian Ad Litem*

A. Interpreting § 95.051(1)(h), Fla. Stat. (2006)

The third and final element to statutory tolling of a child's claim requires that there be "a period of time in which a . . . guardian ad litem does not exist, has an interest adverse to the minor . . . or is adjudicated to be incapacitated to sue." § 95.051(1)(h), Fla. Stat. (2006).  Guardians ad litem are "appointed by the court to represent the best interests of a child in a proceeding as provided for by law." § 39.820(1), Fla. Stat. (2006).  "The guardian ad litem serves as the child's representative in court to represent the child's best interest."  *C.M. v. Dep't of*

*Children & Family Servs.*, 854 So. 2d 777, 779 (Fla. 4th DCA 2003).  When a child is a party to a legal action and lacks a qualified "representative, such as a guardian or other like fiduciary," the court in which that action is proceeding "shall appoint a guardian ad litem."  Fla. R. Civ. P. 1.210(b).[9]  The suffix "ad litem" is a Latin phrase meaning "for the suit" or "for purposes of the suit."  *Ad litem*, *Black's Law Dictionary* (9th ed. 2009).  Florida law defines "guardian ad litem" in greater detail as "a person who is appointed by the court . . . in which *a particular legal matter* is pending to represent a ward *in that proceeding*."  § 744.102(10), Fla. Stat. (2006) (emphasis added).

These definitions demonstrate that the term "guardian ad litem" has significance only within the context of the particular case in which the guardian ad litem is appointed as the representative of a child.  As a simple linguistic matter, therefore, a statute referring to a "guardian ad litem" inherently refers to a specific lawsuit in which that guardian ad litem is acting, and does not refer to other matters in which the guardian ad litem is not representing the child in question.

---

9.  This rule codifies the longstanding principle that courts must scrupulously protect the interests and welfare of children involved in legal matters. *See, e.g.*, *Parrish v. Haas*, 67 So. 868, 869 (Fla. 1915) (holding that when a court learned a party appearing before it was a minor, "[i]t thereupon became the duty of the court to see that the interests of the minor were protected in the suit before it" by appointing a guardian ad litem).

Having identified the plain and obvious meaning of the term "guardian ad litem," we must now determine whether giving that meaning to the term as used in section 95.051(1)(h) would lead to a result which is unreasonable or contrary to the Legislature's intent. *See Daniels*, 898 So. 2d at 64. "Indisputably, Florida's public policy manifests a strong intent to protect children from harm." *Applegate v. Cable Water Ski, L.C.*, 974 So. 2d 1112, 1114 (Fla. 5th DCA 2008). "[O]ur laws have consistently reflected and recognized the very special and unique position of children" as being in many ways more vulnerable than adults. *N. Fla. Women's Health & Counseling Servs., Inc. v. State*, 866 So. 2d 612, 661 (Fla. 2003) (Lewis, J., concurring in result only). In providing for the tolling of children's causes of action, it is clear the Legislature intended to increase procedural protections for children in situations where a child's inability to sue would likely lead to harm. It is difficult to imagine what other purpose section 95.051(1)(h) could possibly serve.

Given the obvious meaning of the term "guardian ad litem" as a representative appointed for a particular legal proceeding, and given the Legislature's well-evidenced intention to provide broad protection for children, we cannot read section 95.051(1)(h) to prohibit tolling of a child's claim when that child is not represented by a guardian ad litem in the proceeding in which the claim to be tolled is being litigated, merely because the child happens to be represented

by a guardian ad litem in a different proceeding. Such a result would be unreasonable and contrary to the clear intent of the Legislature. Instead, we conclude that "guardian ad litem" as used in section 95.051(1)(h), Florida Statutes (2006), means a guardian ad litem appointed to represent the child in the particular proceeding in which the claim to be tolled is brought.

Applying this interpretation of section 95.051(1)(h) to the present case, we conclude the Twins lacked a "guardian ad litem" within the meaning of that statute. Although the Twins were represented by a guardian ad litem in the dependency proceeding from its inception until April 13, 2007, the Twins were never represented by a guardian ad litem in the case at bar. Therefore, the third requirement for statutory tolling under section 95.051(1)(h) is satisfied.

## B. Issue Preservation

The Second District held section 95.051(1)(h) did not toll the Twins' claims because the Twins were represented by a guardian ad litem in the separate dependency proceeding. 217 So. 3d at 1083. The Second District rejected the Twins' argument that the guardian ad litem did not know of the factual basis for the Twins' negligence claims, concluding that, based on the plain language of section 95.051(1)(h), the guardian ad litem's knowledge was irrelevant. *Id.* The Second District declined to address whether "the term 'guardian ad litem' in section 95.051(1)(h) means only a guardian ad litem legally authorized to file suit

- 16 -

on the minor's behalf" because the Twins did not raise that argument on appeal. *Id.* at 1083 n.5. In his specially concurring opinion, then-Chief Judge Villanti did address this issue, but nevertheless concluded it was beyond the scope of the district court's review because it had not been raised. *Id.* at 1084-85 (Villanti, C.J., concurring specially).

A trial court's ruling is treated as correct except insofar as an appellant raises claims of error. *Doe v. Baptist Primary Care, Inc.*, 177 So. 3d 669, 673 (Fla. 1st DCA 2015). "[P]oints covered by a decree of the trial court will not be considered by an appellate court unless they are properly raised and discussed in the briefs." *City of Miami v. Steckloff*, 111 So. 2d 446, 447 (Fla. 1959). Claims of error not raised by an appellant in its initial brief are deemed abandoned. *See Anheuser-Busch Cos. v. Staples*, 125 So. 3d 309, 312 (Fla. 1st DCA 2013). Even though an issue has been abandoned, an appellate court may nonetheless address that issue if it involves the court's "jurisdiction or other issues raising obvious fundamental errors." *All. for Conservation of Nat. Res. in Pinellas Cty. v. Furen*, 122 So. 2d 51, 65 (Fla. 2d DCA 1960). Fundamental errors are those which go "to the foundation of the case or . . . to the merits of the cause of action." *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970). It is therefore possible, in very rare instances, to overcome certain procedural bars. In the present case, the district court declined to address whether the guardian ad litem's ability or inability to sue on the Twins'

behalf had any effect on the applicability of section 95.051(1)(h).  217 So. 3d at 1083 n.5.  The Twins argue the trial court committed fundamental error by granting summary judgment without addressing the guardian ad litem's power to sue, and that the Second District should have ruled on the issue.  They therefore ask this Court to overlook their failure to raise this issue below and to rule on the merits of their argument.

We conclude it is not necessary to reach this issue.  Although the Twins did not raise this particular rationale for statutory tolling before the Second District, they nevertheless argued the applicability of section 95.051(1)(h), and the Second District ruled on the merits that section 95.051(1)(h) did not apply, in part because the Twins were represented by a guardian ad litem in the dependency proceeding.  *Id.* at 1083.  Accordingly, our decision today is concerned only with the fact that no guardian ad litem was appointed to represent the Twins in the case to which the tolling statute relates.  This issue was adequately preserved and addressed on its merits by the Second District, and we may therefore reach it.  *See Savoie v. State*, 422 So. 2d 308, 312 (Fla. 1982) ("[O]nce this Court has jurisdiction of a cause, it has jurisdiction to consider all issues appropriately raised in the appellate process . . . when these other issues have been properly briefed and argued and are dispositive of the case.").

- 18 -

Furthermore, as we have explained above, the phrase "guardian ad litem" in section 95.051(1)(h) refers only to a guardian ad litem appointed for the case in which the claim to be tolled is brought. Because no guardian ad litem was appointed in this case, determining the effect of the guardian ad litem's authority to sue on the tolling statute would require this Court to speculate about the powers of a hypothetical guardian ad litem who *might* have been appointed in this matter, but who was not in fact appointed, and about the effect those powers *might* have had upon our interpretation of section 95.051(1)(h). We decline to address the entirely separate issue of whether a guardian ad litem entitled to sue on the Twins' behalf would avoid the tolling statute. *See D.H.*, 217 So. 3d at 1083 n.5 (declining to address this "difficult question of first impression").

### *III. Timeliness*

As explained above, there were periods of time where the Twins lacked either a parent, guardian, or guardian ad litem, respectively, whose interests were not adverse to theirs and who had not been adjudicated as incapacitated to sue. *Cf.* § 95.051(1)(h), Fla. Stat. (2006). Because the existence of a representative for the child in any one of those categories is sufficient to avoid the tolling statute for the duration of such representation, we must now determine if there was any period of time during which those vacancies overlapped.

- 19 -

It is clear from the record that the Twins lacked a qualifying parent at all times during the events to which this case relates. As we have explained, the Twins also lacked a guardian within the meaning of section 95.051(1)(h) until the Grandparents were appointed their permanent guardians on April 13, 2007. Additionally, the Twins were not represented by a guardian ad litem in these proceedings at any time. Accordingly, we hold the applicable statute of limitations was tolled pursuant to section 95.051(1)(h), Florida Statutes (2006), at all times prior to April 13, 2007, when the Grandparents were appointed as the Twins' permanent guardians.

The statute of limitations applicable to the Twins' claims provides a four-year filing window. § 95.11(3)(a), Fla. Stat. (2006) (providing that causes of action "founded on negligence" must commence within four years).[10] Because the statute of limitations was tolled at all times prior to April 13, 2007, the Twins were required to bring their claims within four years of that date in order for the claims to be considered timely. The complaint in the present case was filed on November 22, 2010, approximately five months before the limitations period expired. Therefore, the Twins' claims presented in this case were not barred by the statute of limitations.

---

10. The statute currently in effect provides the same limitations period. § 95.11(3)(a), Fla. Stat. (2018).

- 20 -

*IV. Other Issues on Review*

Because the statute of limitations applicable to the Twins' claim was tolled at all times prior to April 13, 2007, we need not determine when those claims accrued. The Twins' claims are timely irrespective of when they accrued, and a determination with respect to that issue would have no impact on the dispositive question before this Court. The issue of accrual is therefore moot. *See Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992) ("An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect."). The same is true with respect to the other issues raised on review. We therefore decline to address these issues.

**Conclusion**

We conclude the statute of limitations applicable to the Twins' claims was tolled pursuant to section 95.051(1)(h), Florida Statutes (2006), at all times prior to the Grandparents being appointed as the Twins' permanent guardians on April 13, 2007. We therefore hold the statute of limitations did not bar the Twins' claims in this case and that the Second District erred when it affirmed the trial court's order granting summary judgment on that basis. Because our decision today renders the remaining issues on review moot, we decline to address those issues. Accordingly, we hereby quash the decision of the Second District Court of Appeal and remand to that court for further proceedings consistent with this decision.

It is so ordered.

PARIENTE, LEWIS, QUINCE, and POLSTON, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LEWIS, J., concurs.
CANADY, C.J., dissents with an opinion, in which LAWSON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., concurring.

I fully concur in the majority's decision today, which holds that the Twins' negligence action was tolled by section 95.051(1)(h), Florida Statutes (2006)—the tolling statute[11]—because the Twins did not have a guardian ad litem appointed for the purposes of bringing a negligence action. *See* majority op. at 16. I also agree with the majority's conclusion that the Second District Court of Appeal addressed this issue on the merits, and it is therefore properly before this Court. Majority op. at 18. I write separately to further explain why the Statewide Guardian Ad Litem Program (GALP), which was statutorily created to represent the best interests of children in dependency proceedings, is not empowered to represent children in separate proceedings, such as a separate negligence action.

**Preservation**

---

11. This subsection is now codified in section 95.051(1)(i), Florida Statutes (2017).

- 22 -

Because the Second District specifically ruled on the issue before us—whether the guardian ad litem appointed to represent the Twins' best interests in the dependency action was empowered to bring a separate negligence action on their behalf—and the Twins have properly challenged that ruling in this Court, I agree with the majority that we may address it. Majority op. at 18.

Although the Twins' attorney missed the mark in the Second District by arguing that the Twins' guardian ad litem did not know of the factual basis for the negligence claim, the Second District clearly ruled on the specific issue addressed by the majority in this case—whether the Twins' claim was tolled because they did not have a guardian ad litem appointed for the purposes of bringing a negligence action. Indeed, the Second District concluded: "Under the plain language of the [tolling] statute, the limitations period on a minor's cause of action is not tolled when a guardian ad litem exists, except when that guardian ad litem has interests adverse to the minor or has been adjudicated incapacitated." *D.H. ex rel. R.H. v. Adept Cmty. Servs., Inc.*, 217 So. 3d 1072, 1083 (Fla. 2d DCA 2017). Thus, contrary to the dissent, the Second District did more than "merely reject[]" the Twins' argument that "attempted to read the delayed discovery doctrine into the tolling statute." Dissenting op. at 37-38. The Second District affirmatively held that the limitations period was not tolled because a guardian ad litem existed. *D.H.*, 217 So. 3d at 1083. The Twins have now properly challenged the Second

District's conclusion regarding the plain language of the tolling statute in this Court, arguing that "the dependency court guardian ad litem that existed in this case . . . was not a guardian ad litem sufficient to defeat tolling of the statute of limitations." Twins' Initial Br., at 43-44.

If this Court were to adopt the dissent's view, parties in this Court would be powerless to challenge a district court's ruling on an issue not specifically advanced by the parties in the district court. While the dissent cites a number of cases seemingly in support of this view, *see* dissenting op. at 35-36, upon closer inspection, none of those cases actually stand for the proposition. Rather, the cases cited by the dissent simply stand for the well-established and unremarkable principle that an argument must be preserved in the trial court and then specifically raised on appeal in order for the appellate court to address it. Thus, because nothing in this Court's precedent prohibits us from addressing an issue not specifically argued in the district court, but was nevertheless ruled upon by the district court, I agree with the majority that the issue is properly before this Court.

I now turn to provide a more complete understanding of the scope and role of the statutorily created GALP to demonstrate that the majority's conclusion regarding the applicability of the tolling statute is not only legally correct based on the plain and obvious meaning of the term "guardian ad litem," but also comports with the statutory scheme created by the Legislature. This statutory scheme

reflects a clear legislative intent that guardians ad litem appointed in dependency proceedings are limited to advocating for the child's best interests in those proceedings.

## The Scope and Role of the GALP

Chapter 39, Florida Statutes, governs "Proceedings Relating to Children." In 2003, the Legislature created a Statewide Guardian Ad Litem Office to "provide a statewide infrastructure to increase functioning and standardization among the local programs currently operating in the 20 judicial circuits" around the State. § 39.8296(1)(d), Fla. Stat. (2003); *see also* ch. 2003-53, § 1, Laws of Fla.

Section 39.822, Florida Statutes (2018), outlines the appointment of individual guardians ad litem to represent the best interests of children in abuse, abandonment, or neglect proceedings:

> (1) A guardian ad litem shall be appointed by the court at the earliest possible time to represent the child in any child abuse, abandonment, or neglect judicial proceeding, whether civil or criminal. Any person participating in a civil or criminal judicial proceeding resulting from such appointment shall be presumed prima facie to be acting in good faith and in so doing shall be immune from any liability, civil or criminal, that otherwise might be incurred or imposed.
>
> . . . .
>
> (3) Upon presentation by a guardian ad litem of a court order appointing the guardian ad litem:
>
> (a) An agency, as defined in chapter 119, shall allow the guardian ad litem to inspect and copy records related to the best interests of the child who is the subject of the appointment, including, but not limited to, records made confidential or exempt from s. 119.07(1) or s. 24(a), Art. I of the State Constitution. The guardian ad

litem shall maintain the confidential or exempt status of any records shared by an agency under this paragraph.

(b) A person or organization, other than an agency under paragraph (a), shall allow the guardian ad litem to inspect and copy any records related to the best interests of the child who is the subject of the appointment, including, but not limited to, confidential records. For the purposes of this subsection, the term "records related to the best interests of the child" includes, but is not limited to, medical, mental health, substance abuse, child care, education, law enforcement, court, social services, and financial records.

(4) The guardian ad litem or the program representative shall review all disposition recommendations and changes in placements, and must be present at all critical stages of the dependency proceeding or submit a written report of recommendations to the court. Written reports must be filed with the court and served on all parties whose whereabouts are known at least 72 hours prior to the hearing.

§ 39.822, Fla. Stat. (2018). Nothing in this section or elsewhere in chapter 39 empowers a guardian ad litem appointed to represent a child's best interests in a dependency proceeding to also bring a separate civil suit or negligence action on the child's behalf. In fact, appointed guardians ad litem are statutorily immune from suit. *See id*. § 39.822(1).

In addition to chapter 39 guardians ad litem lacking the legislative authority to bring civil actions on behalf of the children they represent, they also lack the practical ability and resources to bring such actions. As the GALP explained in its amicus brief to this Court, staff are not trained to represent children in private litigation or personal injury cases, and the Legislature "does not provide funds" for doing so. GALP Amicus Br., at 7. Additionally, although the GALP has paid staff to assist in its mission of helping courts determine what is in the best interests of

the child, individual guardians ad litem are typically volunteers who may not be attorneys. *See Volunteer FAQ*, Fla. GALP, https://guardianadlitem.org/faq/ (last visited Aug. 29, 2018).

Further, there may be times when the GALP is appointed to represent a child, but an individual guardian ad litem is not assigned to the case. *See* majority op. at 3-4 & note 2. In this case, an individual guardian ad litem was appointed on June 6, 2006, and discharged less than two months later on July 31, 2006. *Id.* at 3 note 2. Thus, practically speaking, there was no guardian ad litem in this case who could or should have known that there were other entities that might be responsible for the Twins' abuse. And even if there had been, to be able to discover whether other entities contributed to the child's abuse while in the midst of an ongoing dependency action would be highly unlikely, especially for a volunteer guardian ad litem who does not possess that training.

Regardless of whether the Twins were assigned an individual guardian ad litem, the GALP's singular responsibility in this and all dependency cases is to advocate for the best interests of the child. There is simply no indication that the Legislature intended that a chapter 39 guardian ad litem would be expected to determine that a negligence action should be brought arising out of events that led to the dependency proceeding, and then find private counsel to bring the action—all while continuing to advocate for the child's best interests in the dependency

action.  Any result that bars a child from the opportunity to bring a negligence action because the guardian ad litem did not timely file a separate lawsuit for the child's injuries is antithetical to the purpose of the tolling statute, which, as the majority aptly observes, is "to increase procedural protections for children in situations where a child's inability to sue would likely lead to harm."  Majority op. at 15.

I therefore agree with the majority that the term "guardian ad litem," as used in the tolling statute, "means a guardian ad litem appointed to represent the child in the particular proceeding in which the claim to be tolled is brought."  Majority op. at 16.  In this case, because the Twins did not have a "guardian ad litem" within the meaning of the tolling statute, the tolling statute does not prohibit the Twins' negligence claim.  *See* majority op. at 16.

For these reasons, I fully concur in the majority opinion.

LEWIS, J., concurs.

CANADY, C.J., dissenting.

I would approve the cogent decision of the Second District Court of Appeal in *D.H. v. Adept Community Services, Inc.*, 217 So. 3d 1072 (Fla. 2d DCA 2017). The majority ignores the conflict issue and instead focuses solely on the separate issue of tolling, concluding that the Petitioners' negligence cause of action was sufficiently tolled for purposes of the statute of limitations because their appointed

guardian ad litem was not the guardian ad litem contemplated by the tolling statute. But the majority reaches that conclusion only after impermissibly reviving an argument that the Petitioners abandoned on appeal in the Second District. The only tolling argument that is properly before this Court is the one the Petitioners actually presented on appeal. And the Second District correctly rejected that argument as "irrelevant." *Id.* at 1083. The Second District also correctly concluded that the Petitioners' negligence cause of action accrued when its last element occurred. I would thus approve the Second District's decision to affirm the trial court's grant of summary judgment in favor of the Respondents.

## I. Accrual

The Second District's analysis of the accrual issue is sound and should be approved. That analysis is supported by the plain statutory language and this Court's precedent.

Under Florida law, a cause of action generally accrues for statute of limitations purposes "when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (2006). As noted by the Second District, the time when a minor or a minor's representative with authority to sue on the minor's behalf discovers or should have discovered the cause of action is irrelevant under this general rule. *D.H.*, 217 So. 3d at 1077-78. There are certain statutory exceptions to the general rule, of course. Those exceptions include actions for

fraud, products liability, professional malpractice, medical malpractice, and intentional torts based on abuse claims. *See generally* §§ 95.031, 95.11, Fla. Stat. (2006); *see also Davis v. Monahan*, 832 So. 2d 708, 709-10, 709 n.1 (Fla. 2002). But there is no statutory exception for an ordinary negligence claim, whether or not it involves a minor, and whether or not there is an adult with authority to sue on the minor's behalf. *See* § 95.11(3)(a), Fla. Stat.

A review of our precedent reveals only one nonstatutory exception to the general accrual rule—the application of the delayed discovery doctrine in cases involving the sexual abuse of a minor. In *Hearndon v. Graham*, 767 So. 2d 1179, 1186 (Fla. 2000), this Court justified that exception because of the "uniquely sinister" nature of child sexual abuse and because the abuser caused the plaintiff's inability to sue due to the resulting "shock and confusion" and memory suppression. Recognizing that exception where "the lack of memory was caused by the [sexual] abuser" was fair because it was "a situation similar to the statutory circumstances to which the doctrine applies." *Davis*, 832 So. 2d at 710. But this Court made clear in *Davis* that the *Hearndon* exception was narrow and that absent a statute directing otherwise, the general accrual rule applies. *Id.* at 712.[12]

---

12. Subsequent to *Hearndon*, the Legislature codified an exception for sexual battery offenses on victims under age 16. *See* § 95.11(9) Fla. Stat. (2018).

The Legislature has decided that a negligence cause of action accrues when the last element constituting the cause of action occurred. To conclude that a minor's ordinary negligence claim only accrues when an adult with authority to sue on the minor's behalf either knows or should know of the minor's injury and its connection to the defendant's negligence is to do something this Court refused to do in *Davis*—that is, to "rewrit[e] the statute, and, in fact, obliterat[e] the statute." *Id.* at 711. The Second District correctly declined to do so in this case. To the extent *Drake v. Island Community Church, Inc.*, 462 So. 2d 1142 (Fla. 3d DCA 1984), *S.A.P. v. State Department of Health & Rehabilitative Services*, 704 So. 2d 583 (Fla. 1st DCA 1997), or *Doe No. 3 v. Nur-Ul-Islam Academy, Inc.*, 217 So. 3d 85 (Fla. 4th DCA 2017), can be said to announce a nonstatutory, "knew or should have known" accrual rule applicable to any and all actions involving a minor, those decisions should be disapproved.

Although the Petitioners rightfully stress the importance of protecting minors when they lack a proper representative to sue on their behalf, the tolling provisions—when appropriately raised and argued—provide the necessary relief authorized by the Legislature. The accrual doctrine should not be manipulated when the Legislature has clearly pronounced what the exceptions are and are not.

## II. Tolling

The statute of limitations for a minor's claim is generally tolled "during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue." § 95.051(1)(h), Fla. Stat. (2006). Here, both parties agree the Twins' mother had an adverse interest to the Twins and that the "parent" provision of the statute does not defeat tolling. The majority also correctly determines that the grandparents were not guardians within the meaning of the statute until they were appointed as such on April 13, 2007. Majority op. at 13. Where the majority and I disagree is when it comes to the guardian ad litem analysis.

On the guardian ad litem issue, the majority's holding is based on its agreement with the Petitioners' argument that their cause of action was sufficiently tolled because their appointed guardian ad litem was not a "guardian ad litem" for purposes of the tolling statute. Although the majority may ultimately be correct in its application of the statute, the Petitioners never presented any such argument to the Second District below. Indeed, in their initial brief to this Court, the Petitioners concede that they did not "specifically" argue "that the dependency court guardian ad litem was not a guardian ad litem as specified in" the tolling statute. The Petitioners also never presented to the Second District the argument concerning

whether " 'guardian ad litem' in section 95.051(1)(h) means only a guardian ad litem legally authorized to file suit on the minor's behalf." *D.H.*, 217 So. 3d at 1083 n.5; *see also id.* at 1084-85 (Villanti, C.J., concurring specially) (noting that the Twins made the authority argument at the summary judgment hearing in the trial court but failed to raise it as a basis for reversal on appeal). The Petitioners' arguments on these points were therefore waived in the district court and are not properly before this Court. And the district court took pains to acknowledge that— given the absence of a relevant argument by the appellants—the court was "unable to resolve" the question of the scope of the guardian ad litem's authority. *Id.* at 1083 n.5.

The "only" tolling argument presented to the Second District by the Twins was "that the guardian ad litem did not know about their injuries." *D.H.*, 217 So. 3d at 1083. That argument effectively *conceded* that their guardian ad litem was the guardian ad litem contemplated by the statute and had authority to bring the negligence suit. *See id.* (noting that the Twins "acknowledge that they had a guardian ad litem"). The Second District properly rejected the Twins' "awareness" argument as "irrelevant" to the issue of whether the tolling provisions in section 95.051(1)(h) applied. *Id.* In effect, the Twins attempted to apply the delayed discovery doctrine to the tolling statute. But this Court made clear in *Hearndon* that "the delayed discovery doctrine may only be applied to the accrual of a cause

of action." 767 So. 2d at 1184. I would approve the Second District's decision to reject the Twins' only argument.

### III. Preservation and Waiver

In reaching its decision, the majority dodges the issue preservation problem by concluding that no problem in fact exists. Namely, after recognizing that the Second District "declined to address" the Twins' lack-of-authority argument "because the Twins did not raise that argument on appeal," majority op. at 16-17, and after recognizing that the Twins themselves "ask this Court to overlook their failure to raise this issue below," the majority then concludes that the actual issue of relevance—whether the Twins' guardian ad litem was the guardian ad litem contemplated by the statute—"was adequately preserved" because the Twins "nevertheless argued the applicability of section 95.051(1)(h), and the Second District ruled on the merits that section 95.051(1)(h) did not apply, in part because the Twins were represented by a guardian ad litem in the dependency proceeding," majority op. at 18. In other words, because the Twins presented *some* argument for the applicability of section 95.051(1)(h), they did not waive the entirely separate argument that the appointed guardian ad litem was not the guardian ad litem contemplated by the tolling statute. The majority's conclusion is unsupported by our precedent, inconsistent with the structure of the appellate process, and buttressed only by the majority's misreading of the Second District's holding.

- 34 -

As support for its conclusion, the majority relies solely on the following language from *Savoie v. State*, 422 So. 2d 308, 312 (Fla. 1982): "[O]nce this Court has jurisdiction of a cause, it has jurisdiction to consider all issues appropriately raised in the appellate process . . . when these other issues have been properly briefed and argued and are dispositive of the case." *See* majority op. at 18. But nothing in *Savoie* stands for the proposition that a party who abandons an argument on appeal in the district court can revive that argument by briefing it to this Court. *Savoie* simply stands for the proposition that this Court may consider issues that were "appropriately raised" on appeal, even if the district court does not expressly rule on them, so long as they are also "fully briefed and argued . . . before this Court" "and are dispositive of the case." *Savoie*, 422 So. 2d at 312. Here, the Twins' argument regarding their guardian ad litem was never "appropriately raised" on appeal. Rather, it was *abandoned* on appeal.

Our precedent requires that an argument for reversal be specifically preserved in the trial court and then be specifically raised and briefed to the appellate court in order for that appellate court or a higher appellate court to consider it. *See Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982) ("[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below."); *Brown v. Bowie*, 50 So. 637, 638 (Fla. 1909) ("[T]he plaintiff in error [is] confined to the specific

- 35 -

grounds of objection made by him in the trial court, and only such of the grounds so made below as are argued will be considered by an appellate court."). Otherwise, the argument is waived. *See Simmons v. State,* 934 So. 2d 1100, 1117 n.14 (Fla. 2006) (concluding that "any arguments not expressly included" in the brief were waived). General or vague references to an issue will not suffice. *See Duest v. Dugger*, 555 So. 2d 849, 852 (Fla. 1990) ("Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."); *see also Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) (noting that a "failure to *fully* brief and argue" a point "constitutes a waiver" (emphasis added)). Even an argument presented to an appellate court in a reply brief is deemed to have been waived if the "argument was not raised in the initial brief." *Hoskins v. State*, 75 So. 3d 250, 257 (Fla. 2011).

This requirement of specific argument and briefing is one of the most important concepts of the appellate process. Indeed, it is not the role of the appellate court to act as standby counsel for the parties. *See Polyglycoat Corp. v. Hirsch Distributors, Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983) (noting that "it is not the function of the Court to rebrief an appeal" and thereby "become an advocate"). Moreover, it is only logical to require an argument to specifically be raised. Otherwise, the appellee "must not only respond to the specific reasons for reversal advanced by the [appellant] but also anticipate and respond to other

reasons for reversal that may be advanced by the reviewing court." *I.R.C. v. State*, 968 So. 2d 583, 588 (Fla. 2d DCA 2007). In the end, absent some exception to the waiver doctrine, an appellant who abandons an argument cannot benefit from that argument in the future. *See* Philip J. Padovano, *Florida Appellate Practice* § 16:9, at 317 n.9 (2018 ed.) ("An argument not presented in the initial brief is waived and may not be considered as a ground for reversal.").[13] The Second District properly adhered to these well-established appellate principles.

Here, the majority refashions the Twins' very specific argument about their appointed guardian ad litem's lack of "awareness" into a more general issue regarding guardians ad litem and tolling. The majority then concludes that the refashioned issue was in fact "addressed on its merits by the Second District." Majority op. at 18. Indeed, according to the majority: "The Second District held section 95.051(1)(h) did not toll the Twins' claims because the Twins were represented by a guardian ad litem in the separate dependency proceeding." Majority op. at 16. But the Second District held nothing of the sort. Rather, the Second District merely rejected the "only" tolling argument presented by the

---

13. On the other hand, as it relates to affirming a lower court's order, "an appellate court may in some situations affirm an order based on a point not argued in the appellee's brief because the court is obligated to entertain any basis for affirmance." Philip J. Padovano, *Florida Appellate Practice* § 16:9, at 317 (2018 ed.).

Twins—an argument that attempted to read the delayed discovery doctrine into the tolling statute. The Second District did not err in doing so.[14]

## IV. Conclusion

The Petitioners should not prevail in this case on the basis of a tolling argument that the Petitioners themselves never presented to the Second District. Instead of breathing life into abandoned arguments, I would adhere to long-established appellate principles, under which the Second District's decision should be approved. Accordingly, I dissent.

LAWSON, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

    Second District - Case Nos. 2D15-304 and 2D15-677

    (Pinellas County)

---

14. The concurring opinion attempts to support the majority's misreading of the Second District's narrow holding by noting that the Second District looked to the plain language of the tolling statute and concluded that "the limitations period on a minor's cause of action is not tolled when a guardian ad litem exists, except when that guardian ad litem has interests adverse to the minor or has been adjudicated incapacitated." Concurring op. at 23 (quoting *D.H.*, 217 So. 3d at 1083). But the concurring opinion ignores that the Twins effectively conceded that they had a guardian ad litem for purposes of the tolling statute. The Second District thus looked to the statutory language simply to explain why the Twins' "awareness" argument—their one and only argument—was irrelevant. The Second District did not rule on an issue that neither party advanced and that the court expressly stated it was "unable to resolve." *D.H.*, 217 So. 3d at 1083 n.5.

- 38 -

Richard A. Filson of Filson & Penge, P.A., Sarasota, Florida; Howard M. Talenfeld and Nicole R. Coniglio of Talenfeld Law, Fort Lauderdale, Florida,

    for Petitioner

Allison C. Heim and Kevin M. Davis of Mintzer Sarowitz Zeris Ledva & Meyers, LLP, Tampa, Florida,

    for Respondent B.E.A.R.R., Inc.

J. Robert McCormack and Lara J. Peppard of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Tampa, Florida,

    for Respondent Adept Community Services, Inc.

Susan W. Fox of Fox & Loquasto, P.A., Tallahassee, Florida,

    for Amicus Curiae Florida's Children First

Dennis W. Moore, General Counsel, Thomasina F. Moore, Director of Appeals, and Dave Krupski, Appellate Counsel, Guardian ad Litem Program, Sanford, Florida,

    for Amicus Curiae Guardian ad Litem Program