NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PATTY DAVIS, on behalf of herself            )
and others similarly situated,               )
                                             )
            Appellant,                       )
                                             )
v.                                           )        Case Nos.    2D17-829
                                             )                     2D17-1790
SHERIDAN HEALTHCARE, INC.;                   )
SHERIDAN RADIOLOGY SERVICES                  )        CONSOLIDATED
OF PINELLAS, INC.; LABORATORY                )
CORPORATION OF AMERICA; and                  )
LABORATORY CORPORATION OF                    )
AMERICA HOLDINGS,                            )
                                             )
            Appellees.                       )
_____ )

Opinion filed October 16, 2019.

Appeal from the Circuit Court for
Hillsborough County; Mark R. Wolfe and
Cheryl K. Thomas, Judges.

J. Andrew Meyer of J. Andrew Meyer, P.A.,
Redington Beach; and Christa L. Collins of
Harmon Parker, P.A., Tampa, for Appellant.

Susan N. Eisenberg and Jennifer T.
Williams of Cozen O'Connor, Miami, for
Appellee Sheridan Healthcare, Inc.

David S. Johnson and Scott W. Anderson
of Johnson Daboll Anderson, PLLC,
Tampa, for Appellee Sheridan Radiology
Services of Pinellas, Inc.

Carol A. Licko and James L. VanLandingham of Hogan Lovells US, LLP, Miami; and Steven F. Barley of Hogan Lovells US, LLP, Baltimore, Maryland, for Appellees Laboratory Corporation of America and Laboratory Corporation of America Holdings.

KHOUZAM, Chief Judge.

Patty Davis filed two separate actions under section 559.77(1), Florida Statutes (2014), of the Florida Consumer Collection Practices Act (FCCPA). She alleged that, as an injured employee under chapter 440, Florida Statutes (2014), the Workers' Compensation Law (WCL), two medical service providers illegally attempted to collect money from her. The courts below dismissed her actions, finding that because the WCL grants exclusive jurisdiction over any matter concerning reimbursement to the Florida Department of Financial Services, she is precluded from filing her claims under the FCCPA. For the reasons set forth below, we reverse both dismissals and hold that the WCL does not preclude Davis's claims filed against her workers' compensation medical providers under section 559.77(1) of the FCCPA.

Davis was injured in the course of her employment in December 2013 and applied for workers' compensation benefits. As part of these benefits, she had a preoperative chest x-ray taken in October 2014 by Sheridan Radiology Services of Pinellas, Inc., a subsidiary of Sheridan Healthcare, Inc. (collectively, Sheridan). In her complaint, Davis alleged that Sheridan knew she was a workers' compensation patient and thus not responsible for paying the x-ray fees. Despite this knowledge, Sheridan sent Davis a bill in April 2015, demanding payment for the October 2014 x-ray. Over a month later, in June 2015, Davis received another bill, this time from a collection

agency.  In response, Davis's workers' compensation carrier, Commercial Risk Management, Inc., contacted Sheridan by telephone and by letter.  In both communications, the carrier informed Sheridan that Davis was not the party responsible for payment and warned that billing Davis was a violation of the WCL.  Despite this warning, Sheridan sent yet another bill to Davis in July 2015.  In response to this third demand for payment, Davis filed suit against Sheridan in circuit court.  Her amended complaint alleges violations of the FCCPA, section 559.72(9), for attempting to collect an illegitimate debt, and section 559.72(5), for disclosing false information to a collection agency.

The second set of defendants in this consolidated case, Laboratory Corporation of America and Laboratory Corporation of America Holdings (collectively, Labcorp), also provided medical testing in connection with Davis's work injury.  Davis alleges that, like Sheridan, Labcorp billed her twice for an illegitimate debt, once in May 2014 and again in September 2014.  She therefore filed a separate FCCPA claim against Labcorp for violations of section 559.72(9).

After a period of complex litigation in both lawsuits, Sheridan and Labcorp moved for judgments on the pleadings.  They argued that Davis's FCCPA claims depend on her showing an illegitimate debt, and the law determining the legitimacy of that debt is the WCL.  Section 440.13(11)(c) grants exclusive jurisdiction to the Department of Financial Services over "any matters concerning reimbursement."  Since Davis's FCCPA claims are actually matters concerning reimbursement of Sheridan and Labcorp, her workers' compensation medical providers, they argued that the circuit

court lacks subject matter jurisdiction to hear her FCCPA claims. The courts below agreed and dismissed the claims. This consolidated appeal follows.

The parties present two interpretations of the interaction between the WCL and the FCCPA. Sheridan and Labcorp contend that the WCL precludes Davis's FCCPA claims against workers' compensation medical providers. Davis, on the other hand, argues that the WCL's grant of exclusive jurisdiction to a state agency over "matters concerning reimbursement" does not abrogate the FCCPA. In resolving this question, we look to legislative intent, "the polestar that guides a court's statutory construction analysis." Knowles v. Beverly Enters.-Fla., Inc., 898 So. 2d 1, 5 (Fla. 2004).

To determine the legislative intent behind a statute, a court must first examine the plain meaning of the statute's text. "[T]he statute's text is the most reliable and authoritative expression of the Legislature's intent." Fla. Farm Bureau Cas. Ins. Co. v. Cox, 967 So. 2d 815, 820 (Fla. 2007) (quoting V.K.E. v. State, 934 So. 2d 1276, 1286 (Fla. 2006) (Cantero, J., dissenting)). "If the plain meaning of the language is clear and unambiguous, then the Court need not delve into principles of statutory construction unless that meaning leads to a result that is either unreasonable or clearly contrary to legislative intent." Polite v. State, 973 So. 2d 1107, 1111 (Fla. 2007); see also Dep't of Children & Family Servs. v. P.E., 14 So. 3d 228, 234 (Fla. 2009).

The plain language of the WCL states that the Department of Financial Services "has exclusive jurisdiction to decide any matters concerning reimbursement, to resolve any overutilization dispute under subsection (7), and to decide any question concerning overutilization under subsection (8), which question or dispute arises after

- 4 -

January 1, 1994."  § 440.13(11)(c) (emphasis added).  On the other hand, the FCCPA creates "a civil action against a person violating the provisions of s. 559.72."  § 559.77(1).  And section 559.72 states that "[i]n collecting consumer debts, no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."  § 559.72(9) (emphasis added).  The section also contains a similar prohibition against "[d]isclos[ing] to a person other than the debtor or her or his family information affecting the debtor's reputation . . . with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false."  § 559.72(5).

We first note that the terms "reimbursement" and "collection" do not mean the same thing.  To "reimburse" means to "repay" or "to make restoration or payment of an equivalent to."  *Reimburse*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/reimburse (last visited Apr. 25, 2019).  The term is often synonymous with indemnification and is typically used to express repayment by a third party not directly involved in a transaction.  See *Reimbursement*, Black's Law Dictionary (11th ed. 2019); see also *Indemnify*, Black's Law Dictionary (11th ed. 2019).  For example, if John does not have cash at lunchtime and Jane purchases a ten-dollar sandwich for him from a vendor, John reimburses Jane when he pays her the ten dollars she spent on his behalf.  Jane does not reimburse the vendor when she buys the sandwich, nor does she reimburse the vendor if she instead buys the sandwich on credit and pays for it next week.  Reimbursement thus involves more than two parties.

- 5 -

On the other hand, to "collect" means "to gather or exact" or "to claim as due and receive payment for." *Collect*, Merriam-Webster.com https://www.merriam-webster.com/dictionary/collect (last visited Apr. 25, 2019). If John fails to pay Jane back for his sandwich, Jane attempts to collect the debt when she does something—writes a letter, sends an email, makes a phone call—to demand that John pay her. The collection of the debt is Jane's demand and receipt of ten dollars from John. Similarly, if Jane fails to pay the vendor for the sandwich, the vendor's pursuit of that payment would also constitute collection activity. Thus, collection is not the same concept or type of activity as reimbursement, even if a transaction sometimes involves both.

Applying the ordinary meanings of the two terms to the statutory sections at issue here, it becomes clear that Davis's FCCPA claims against illegal "collection" practices are not "matters concerning reimbursement." To mirror the Jane, John, and vendor example, Davis's compensation carrier, Commercial Risk Management, Inc., is responsible for providing Davis's medical services. Sheridan and Labcorp provided those medical services on behalf of Commercial Risk Management. It follows that the only party who can reimburse Sheridan and Labcorp is Commercial Risk Management. Indeed, section 440.13(13)(a) provides that "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter." Thus, claims that Sheridan and Labcorp have engaged in unlawful practices to "collect" consumer debts from Davis under the FCCPA are not "matters concerning reimbursement" committed to the exclusive jurisdiction of the Department of Financial Services under section 440.13(11)(c). Rather, "reimbursement" under section 440.13(11)(c) in this context involves Commercial Risk Management making Sheridan

and LabCorp whole for services they rendered to Davis.  In contrast, "collecting" under the FCCPA involves the separate and distinct conduct of Sheridan or LabCorp making demands against a consumer for payment of charges they claim to be due for those services.  Different parties as well as different kinds of activity are involved.

The dissent appears to conflate "reimbursement" and "collection" to conclude that the phrase "matters concerning reimbursement" in section 440.13(11)(c) unambiguously embraces collecting a consumer debt when that debt is a charge covered by the WCL.  However, the dissent reaches this result merely by asserting that the statute unambiguously supports its interpretation and without discussing the meaning of the relevant statutory terms.  Moreover, to the extent that the dissent may have based its conclusion on the "matters concerning" language, that language does not change the result.  The term "concerning" means "regarding" or "relating to." *Concerning*, Merriam-Webster.com, https://www.merriamwebster.com/dictionary /concerning (last visited Apr. 25, 2019).  Because reimbursement and collection consist of demonstrably different conduct, we find it difficult to conclude that debt collection is a matter "concerning" reimbursement in this context.

At most, the dissent's view of the term "concerning" introduces an ambiguity into our analysis of section 440.13(11)(c), a choice between two reasonable but competing interpretations.  One requires a direct connection between a "matter" and reimbursing a health care provider while the other reaches conduct only indirectly or tangentially related to reimbursement, such as the activity of collection.[1]  Any ambiguity is easily resolved in favor of the former interpretation.

---

[1]The dissent points out that section 440.13(1)(q) defines a "reimbursement dispute" as "any disagreement between a health care provider and carrier concerning

- 7 -

It is "presumed that statutes are passed with the knowledge of existing statutes, so courts must favor a construction that gives effect to both statutes rather than construe one statute as being meaningless or repealed by implication." City of Treasure Island v. Tahitian Treasure Island, LLC, 253 So. 3d 649, 659 (Fla. 2d DCA 2017) (quoting Butler v. State, 838 So. 2d 554, 556 (Fla. 2003)). "[Implicit] repeals are not favored and there must be a positive repugnancy between the two [statutes] or a clear intent to repeal must be apparent." Id. (quoting Wade v. Janney, 7 So. 2d 797, 798 (Fla. 1942)). In the instant conflict, we find no such repugnancy or clear intent in the WCL and the FCCPA. The former regulates compensation for medical services under a government program while the latter regulates debt collection practices.

In light of the presumption against implicit repeals, we think the better view is to read both statutes in harmony by allowing courts to refer to the WCL to determine the legitimacy of debts in FCCPA actions.[2] A claim under section 559.72(9) has three elements: an illegitimate debt, a threat or attempt to enforce that debt, and knowledge that the debt is illegitimate. When a statute like the WCL renders a debt illegitimate,

payment for medical treatment" and reasons that, because the legislature chose a defined term to refer to disputes between providers and carriers over payment, the phrase "matters concerning reimbursement" must be broadly construed to include disputes like the one at issue here. We do agree that there are categories of "matters concerning reimbursement" that are not "reimbursement disputes," such as disputes between employees and carriers regarding reimbursement of a provider or disagreements between providers and the Department of Financial Services over the establishment of reimbursement rates. Those kinds of disputes may very well be committed to the exclusive jurisdiction of the department as "matters concerning reimbursement." But it does not follow that the department has exclusive jurisdiction over any matter bearing an indirect, remote, or tangential connection to reimbursement.

[2]See Anthony J. Palermo, Doctors as Debt Collectors? Healthcare Providers and the Florida Consumer Collection Practices Act, 67 Fla. L. Rev. F. 105, 108 (2016).

that debt fulfills the first element necessary to trigger FCCPA liability. Thus, the debts for medical services that Davis did not owe pursuant to the WCL constitutes an element of her FCCPA claims. This rationale applies just as well to Davis's section 559.72(5) claim because the legality of sending a bill collector after Davis also depends on the validity of the Sheridan debt. This is not a situation in which Davis, Sheridan, and Labcorp are disputing the amount owed or who owes it. Those questions may very well be within the exclusive jurisdiction of the Department of Financial Services. In contrast, this dispute centers on whether Sheridan's and Labcorp's debt collection practices were fraudulent, a question the FCCPA directly addresses.

In addition to the presumption against implicit repeals, the maxim generalia specialibus non derogant supports our view. "Ordinarily, where a specific provision conflicts with a general one, the specific governs." Edmond v. United States, 520 U.S. 651, 657 (1997) (citing Busic v. United States, 446 U.S. 398, 406 (1980)). "In Florida law, a more specific statute is considered an exception to, or qualification of, the general terms of the more comprehensive statute." Legal Envtl. Assistance Found. v. Dep't of Envtl. Prot., 702 So. 2d 1352, 1353 (Fla. 1st DCA 1997) (citing Floyd v. Bentley, 496 So. 2d 862, 864 (Fla. 2d DCA 1986)); see also McKendry v. State, 641 So. 2d 45, 46 (Fla. 1994) ("[A] specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms."). Applying this rule, section 440.13(11)(c)'s language eliminating circuit court jurisdiction over "any matters concerning reimbursement" is very general and broad. In contrast, section 559.77(1) creates a private cause of action for violations of section 559.72. Within section 559.72, subsections (5) and (9) prohibit certain debt collection practices

with far greater specificity. These collection practices are a small subset of issues that might "concern reimbursement." Because section 559.77(1) thus creates a private cause of action in very specific circumstances, it would constitute an exception to the more general jurisdictional restrictions of section 440.13(11)(c). In this case then, any conflict would resolve in favor of the FCCPA and Davis's claims would be properly brought in circuit court.[3]

The two statutes' purposes and legislative histories further support our view of their interaction. The purpose of the WCL and its intended application is set out in section 440.015:

> It is the intent of the Legislature that the Workers' Compensation Law be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer. . . . The workers' compensation system in Florida is based on a mutual renunciation of common-law rights and defenses by employers and employees alike. . . . Additionally, . . . the laws pertaining to workers' compensation are to be construed in accordance with the basic principles of statutory construction and not liberally in favor of either employee or employer. It is the intent of the Legislature to ensure the prompt delivery of benefits to the injured worker.

_____

[3]Although not necessary to our decision, it is worth noting that the dissent's interpretation of the phrase "any matters concerning" to reach matters bearing only an indirect or tangential connection to reimbursement necessarily produces results no reasonable person could have meant. See Catron v. Roger Bohn D.C., P.A., 580 So. 2d 814, 818 (Fla. 2d DCA 1991) (stating that when statutory language is ambiguous, a court should consider whether an interpretation yields unreasonable results). In addition to the provisions invoked here, the FCCPA also provides that "[i]n collecting consumer debts, no person shall . . . use or threaten force or violence." § 559.72(2). Under the dissent's interpretation, an employee who is physically assaulted by a health care provider attempting to collect a bill would have no private right of action under the FCCPA (or, presumably, under common law) because the assault was a matter concerning reimbursement.

- 10 -

(Emphasis added.)  In other words, the WCL is primarily intended to save time and money for injured employees and their employers.  On the other hand, the legislative history for the FCCPA indicates a different purpose: "Part VI of ch. 559, F.S., regulates consumer collection agencies and protects consumers from certain debt collection practices that involve fraud, harassment, threats, and other unscrupulous activities." Fla. S. Comm. on Gen. Gov't Approp., CS for S.B. 2086 (2010) Staff Analysis 2 (Apr. 20, 2010); see also Harris v. Beneficial Fin. Co. of Jacksonville, 338 So. 2d 196, 200-01 (Fla. 1976) ("The [FCCPA] is a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations.").

Based on the body of Davis's amended complaint and the collection letters attached thereto, Davis's allegations have more to do with illegal harassment by creditors and a bill collector than quick and efficient resolution of an unpaid workers' compensation bill.  Her dispute centers on practices that the FCCPA was specifically designed to address.  It follows that section 440.13(11)(c) is not meant to interfere with the FCCPA.  To hold otherwise would transform section 440.13 from a sword that enforces compliance with the WCL into a shield for medical providers, insulating them from ordinary civil liability for abusive collection practices.  Clearly, this is not what the statutes contemplated.

Finally, we are not persuaded by Sheridan and Labcorp's arguments relying on Sanders v. City of Orlando, 997 So. 2d 1089 (Fla. 2008), and rules 69L-34.001(6), 69L-34.003(1) and 69L-34.003(4)(i) of the Florida Administrative Code. These authorities do not require an inference denying circuit court jurisdiction over Davis's FCCPA claims.  Rather, Sanders discusses the historical trend of Florida courts

interpreting the WCL to exclude circuit court jurisdiction in contexts that do not involve 440.13(11)(c). See Sanders, 997 So. 2d at 1093. Indeed, the relevant portions of Sanders centers around disputes between injured workers and employers or carriers. Id. Similarly, rules 69L-34.001 and .003 lay out violations of the WCL and channels for reporting violations. While it is indeed a WCL violation for a health care provider to improperly bill an injured worker, see § 440.13(13)(a), and such a worker can submit collection letters to report such a violation, it does not follow that improper collection is a matter concerning reimbursement. As is often the case in the context of other statute combinations, a defendant could be in violation of both the WCL and the FCCPA. These code provisions simply provide no indication of where the grant of exclusive jurisdiction ends, especially under the specifics of this case and in relation to the FCCPA.

We are perplexed and disappointed by the dissent's implication that, by resolving an apparent conflict between the WCL and the FCCPA, we are deciding an issue that has not been raised in order to reach a desired result. Properly interpreting section 440.13(11)(c) is at the heart of Davis's appeal. The second issue in her brief, titled "Nothing in the Workers' Compensation [Law] Divests the Circuit Court of Subject Matter Jurisdiction to Adjudicate Ms. Davis's FCCPA Claims," contains a subsection titled "The Workers' Compensation Provisions regarding 'Reimbursement Disputes' are completely inapposite to Ms. Davis's Claims." And within that subheading, Davis explicitly argues that section 440.13(11)(c) does not deprive the circuit court of jurisdiction over her FCCPA claims. In the answer brief, Sheridan and Labcorp respond to this argument and counter with their own interpretation of (11)(c). The parties

extensively addressed (11)(c) at oral argument, and we do not see how we can resolve this appeal without correctly interpreting it ourselves.

The dissent cites to a number of cases correctly asserting that this court cannot rule on issues not argued in the briefs. However, this case is distinguishable for the simple reason that the issues discussed in this opinion <u>were</u> argued in the briefs. <u>See, e.g.</u>, <u>Roop v. State</u>, 228 So. 3d 633, 642 (Fla. 2d DCA 2017) (holding that whether a witness's actions before calling 911 indicated reflective thought so as to negate a hearsay exception was not an issue raised by the appellant); <u>I.R.C. v. State</u>, 968 So. 2d 583, 587-88 (Fla. 2d DCA 2007) (holding that appellant did not raise the issue that he was unlawfully detained, precluding the court from considering that issue in appellant's nonconsensual search claim); <u>Advanced Chiropractic & Rehab. Ctr. Corp. v. United Auto. Ins. Co.</u>, 103 So. 3d 866, 868-69 (Fla. 4th DCA 2012) (granting writ of certiorari where circuit appellate court reversed on the issue of competent record evidence not raised by appellant, who only raised issues of timeliness and excusable neglect); <u>Polyglycoat Corp. v. Hirsch Distribs., Inc.</u>, 442 So. 2d 958, 960 (Fla. 4th DCA 1983) (holding that a party may not raise an issue on appeal for the first time in a motion for rehearing). Furthermore, we are not bound by the precise reasoning of the parties in answering a question they have raised. While the dissent relies on the dissenting opinion in <u>D.H. v. Adept Community Services, Inc.</u>, 271 So. 3d 870, 881 (Fla. 2018), to assert otherwise, the majority opinion in that case held that resolving an issue of statutory application based on a "particular rationale" not argued by the appellants is permissible where the applicability of the statute under consideration was otherwise raised and argued. In <u>D.H.</u>, the Florida Supreme Court interpreted the term "guardian

- 13 -

ad litem" in a statute that tolls the statute of limitations for claims brought on behalf of minors, even though none of the arguments raised in the court of appeals called for the interpretation of that term.  Id. at 880-81.  The court found the question preserved nonetheless because the court of appeals had reached other questions (the ones the parties had raised) involving the statute.  Id. at 881.

We do not need to go that far in this case because, unlike in D.H. the parties have presented the question of whether section 440.13(11)(c) precludes Ms. Davis from bringing her FCCPA claims.  The resolution of that question requires that we determine whether her claims constitute "any matters concerning reimbursement" under section 440.13(11)(c), which, in turn, requires that we give meaning to that statutory phrase.  We can either give that phrase an incorrect meaning by limiting our analysis to the incomplete arguments the parties have made, or we can give it the correct meaning by doing what judges do every day—applying settled principles of statutory construction to declare what a statute means.  Indeed, it is our function as an appellate court to make these types of determinations.  If we were bound by the parties' precise reasoning, we would be obligated to write a legally incorrect opinion when an appellant presents a question but neither side suggests the correct answer.[4]  Requiring us to do so would undermine this court's purpose of correctly resolving the issues brought before us.

---

[4]It is worth noting that the arguments made before the trial courts included a host of issues in addition to interpreting section 440.13(11)(c), and the trial judges' dismissals based on jurisdiction did not precisely delineate their rationale.  Section 440.13(11)(c) came to the forefront as the parties developed their arguments in this court.

Accordingly, we reverse the dismissals and hold that section 440.13(11)(c) does not preclude circuit court jurisdiction over Davis's FCCPA claims against her WCL medical providers.  Additionally, we certify to the Florida Supreme Court the following question of great public importance pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v):

> DOES SECTION 440.13(11)(c) OF THE WORKERS' COMPENSATION LAW PRECLUDE CIRCUIT COURT JURISDICTION OVER CLAIMS UNDER SECTION 559.77(1) OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT?

> Reversed and remanded for proceedings consistent with this opinion;

question certified.


SALARIO, J., Concurs specially.
BLACK, J., Dissents with opinion.


SALARIO, Judge, Specially concurring.

I join Judge Khouzam's opinion except to the limited extent that it relies upon the legislative purpose statement in the Workers' Compensation Law and a Senate Staff Analysis on the Florida Consumer Collection Practices Act.  In my view, the broad statements of purpose in these sources (especially the staff analysis) are not useful in determining the meaning of the statutory language before us, and reliance on

them is unnecessary in light of the balance of the opinion's correct analysis.  See, e.g., Kasischke v. State, 991 So. 2d 803, 810 (Fla. 2008); State Farm Mut. Auto. Ins. Co. v. Smith, 198 So. 3d 852, 863 n.8 (Fla. 2d DCA 2016).

BLACK, Judge, dissenting.

Based on the arguments presented to this court and the plain language of the FCCPA and the WCL, I would affirm the circuit courts' dismissals of Ms. Davis's lawsuits; therefore, I respectfully dissent.

It is undisputed that Ms. Davis received treatment from Sheridan and Labcorp for her work-related injury under her workers' compensation benefits and that in

turn Sheridan and Labcorp sought payment from Ms. Davis for providing treatment to her. It is also undisputed that Commercial Risk Management authorized the treatment and that Sheridan and Labcorp violated the WCL by seeking reimbursement for their services directly from Ms. Davis. See § 440.13(13)(a). As a result of the actions of Sheridan and Labcorp, Ms. Davis filed lawsuits against them in the circuit courts alleging violations of the FCCPA. In dismissing Ms. Davis's lawsuits against Sheridan and Labcorp for lack of subject matter jurisdiction, the circuit courts determined that (1) the WCL is the basis for the alleged FCCPA violations, (2) the WCL is self-executing, and (3) the WCL does not create a private right of action for claimants' lawsuits against health care providers for violations of the WCL's reimbursement requirements. Ms. Davis asks this court to reverse the orders dismissing her lawsuits by applying the unambiguous language of the FCCPA and the WCL.[5] She contends that the circuit courts erred in finding that they lacked subject matter jurisdiction over her claims because the FCCPA, by its plain and unambiguous language, does not contain exceptions or exclusions for actions predicated upon the unlawful collection practices of a health care provider for medical debts subject to the WCL. She asserts that the FCCPA does not exclude medical debts from consumer debt or otherwise exclude her or Sheridan and Labcorp from the FCCPA's operative definitions. Moreover, Ms. Davis argues that nothing in the plain language of the WCL divests the circuit courts of

_____

[5]She also contends that her complaints sufficiently alleged prima facie claims under the FCCPA to survive the motions for judgment on the pleadings, that the absence of a private right of action under the WCL does not deprive the circuit courts of jurisdiction to consider her claims, and that the circuit courts erred in reading the FCCPA and WCL to be in conflict. To the extent that these arguments are separable from those addressed, they do not merit reversal.

jurisdiction to adjudicate her claims and that the FCCPA and the WCL must be read in harmony.

The issue before this court is whether the circuit courts had jurisdiction over Ms. Davis's claims against Sheridan and Labcorp. The majority's resolution of this jurisdictional issue, as well as the arguments of Ms. Davis and Sheridan and Labcorp, presuppose that WCL health care bills are consumer debts under the FCCPA, a legal determination which no Florida state court appears to have made and which this court has not been asked to make in this case. Cf. Steiner & Munach, P.A. v. Williams, 334 So. 2d 39, 42 (Fla. 3d DCA 1976) (concluding that medical providers of non-WCL services violated section 559.72(10), Florida Statutes (1973), which addressed prohibited practices in the collection of consumer claims, defined as the obligation for payment of money "arising out of a transaction wherein credit has been . . . extended," § 559.55(1)). Without deciding that issue—as it is not before us—it is nonetheless well established that "specific statutes covering a particular subject area will control over a statute covering the same subject in general terms." See Sch. Bd. of Palm Beach Cty. v. Survivors Charter Sch., 3 So. 3d 1220, 1233 (Fla. 2009); accord Read v. MFP, Inc., 85 So. 3d 1151, 1154 (Fla. 2d DCA 2012). Here, the FCCPA regulates consumer debt collection practices generally and sets forth prohibited debt collection practices. See § 559.72; Read, 85 So. 3d at 1153. As relevant to Ms. Davis's case, the FCCPA permits private actions where a person attempts to collect a debt he knows to be illegitimate. "This statutory scheme affords a general ability to avail the judicial process" for enumerated abuses in the area of debtor-collector relations. See Stevens v. State, 127 So. 3d 668, 669 (Fla. 1st DCA 2013).

The WCL, on the other hand, is "meant to systematically resolve nearly every workplace injury case on behalf of both the employee and the employer," Taylor v. Sch. Bd. of Brevard Cty., 888 So. 2d 1, 6 (Fla. 2004), "without the necessity of any legal or administrative proceedings," Fla. Erection Servs., Inc. v. McDonald, 395 So. 2d 203, 209 (Fla. 1st DCA 1981) (citing A. B. Taff & Sons v. Clark, 110 So. 2d 428, 436 (Fla. 1st DCA 1959)). "The [D]epartment [of Financial Affairs], [the Agency for Health Care Administration], the Office of Insurance Regulation, and the Division of Administrative Hearings shall administer the [WCL] in a manner which facilitates the self-execution of the system and the process of ensuring a prompt and cost-effective delivery of payments." § 440.015. The WCL is "an efficient and self-executing system" intended to ensure "prompt and cost-effective delivery of payments" rather than "economic or administrative burden[s]." § 440.015. And the legislature specified that the Department of Financial Affairs (Department) shall have "exclusive jurisdiction to decide any matters concerning reimbursement." § 440.13(11)(c) (emphasis added).

Clearly and unequivocally, any matters that concern chapter 440 reimbursement fall within the exclusive jurisdiction of the Department. The phrase "any matters concerning reimbursement" is unambiguous. In fact, Ms. Davis does not argue that her claims do not concern reimbursement or payment for medical treatment. Instead she relies on the WCL's definition of "reimbursement dispute" and argues that because a "reimbursement dispute" refers to a dispute between a health care provider and a carrier and not a dispute between a health care provider and an injured worker

- 19 -

the exclusive jurisdiction of the Department is not invoked in this case.[6] See §

440.13(1)(q). But the phrase "any matters concerning reimbursement" in section

440.13(11)(c) plainly encompasses more than "reimbursement dispute[s]" as that term

is defined in section 440.13(1)(q). That is, while a "reimbursement dispute" is clearly a

matter concerning payment for medical treatment, "matters concerning reimbursement"

are not limited to payment disputes between health care providers and carriers.[7] "The

legislative use of different terms in different portions of the same statute is strong

evidence that different meanings were intended." State v. Mark Marks, P.A., 698 So. 2d

533, 541 (Fla. 1997) (quoting Dep't of Prof'l Regulation v. Durrani, 455 So. 2d 515, 518

---

[6]Although Ms. Davis argues for the first time in her reply brief that her claims do not concern reimbursement, "[i]ssues raised on appeal for the first time in a reply brief are not properly before this court and will not be considered." See Plichta v. Plichta, 899 So. 2d 1283, 1287 (Fla. 2d DCA 2005). Likewise, "[c]laims for which an appellant . . . provides only conclusory argument[] are insufficiently presented for review and are waived." See Stanton v. Fla. Dep't of Health, 129 So. 3d 1083, 1085 (Fla. 1st DCA 2013) (first alteration in original) (quoting Hammond v. State, 34 So. 3d 58, 59 (Fla. 4th DCA 2010)).

[7]The majority concedes that "matters concerning reimbursement" as contemplated by section 440.13(11)(c) are not limited only to "reimbursement disputes" as contemplated by section 440.13(1)(q). And despite the majority's contention to the contrary, my plain reading of the phrase "any matters concerning reimbursement" does not "introduce[] an ambiguity into our analysis." See Salinas v. United States, 522 U.S. 52, 60 (1997) ("A statute can be unambiguous without addressing every interpretive theory offered by a party. It need only be 'plain to anyone reading the Act' that the statute encompasses the conduct at issue." (emphasis added) (quoting Gregory v. Ashcroft, 501 U.S. 452, 467 (1991))); Fajardo v. State, 805 So. 2d 961, 963-64 (Fla. 2d DCA 2001) ("Although virtually every English sentence contains some level of uncertainty, the rules of construction are reserved for cases in which a fair reading of the statute leaves the judiciary in genuine doubt about the correct application of the statute. '[S]uch rules are useful only in the case of doubt and should never be used to create doubt, but to remove it.' " (alteration in original) (quoting State v. Egan, 287 So. 2d 1, 4 (Fla. 1973))). Moreover, reimbursement not only involves compensating a health care provider, as asserted by the majority, but can also include compensating a claimant. See, e.g., Fortune v. Gulf Coast Tree Care, Inc., 148 So. 3d 827 (Fla. 1st DCA 2014).

(Fla. 1st DCA 1984)); see also Burgess v. State, 198 So. 3d 1151, 1157 (Fla. 2d DCA 2016) (en banc) ("[T]he legislature does not ordinarily use different words to mean the same thing.").  And the "courts of this state are 'without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications.  To do so would be an abrogation of legislative power.' "  Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (quoting Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So. 2d 777, 778 (Fla. 1st DCA 1968)).  Moreover, "[a]ll Article V courts that have been presented with the issue of subject matter jurisdiction to adjudicate disputes involving workers' compensation matters have uniformly held in very broad, general, and generic terms that Article V courts have no subject matter jurisdiction to adjudicate disputes involving workers' compensation issues."  Sanders v. City of Orlando, 997 So. 2d 1089, 1093 (Fla. 2008).

As Ms. Davis suggests, it is entirely possible to harmonize the FCCPA and the WCL.  "[T]he [l]egislature is presumed to have intended that both laws are to operate coextensively and have the fullest possible effect."  Stevens, 127 So. 3d at 669 (quoting Palm Beach Canvassing Bd. v. Harris, 772 So. 2d 1273, 1287 (Fla. 2000)).  Given that the specific statute will govern over the general, "the specific statute is seen as an exception to the general statute."  Id. (citing McKendry v. State, 641 So. 2d 45, 46 (Fla. 1994)).  The Stevens case is analogous and instructive.  In that case the appellants filed suit against the appellees, comprising various parties in the financing, sale, and securitization of mortgages, seeking to hold them accountable under Florida's False Claim Act (FFCA) for allegedly failing to pay Florida documentary sales taxes associated with various assignments of promissory notes.  Id. at 668.  The circuit court

dismissed the action and the First District affirmed the dismissal, holding that the circuit court lacked subject matter jurisdiction over this private action pursuing recovery for a failure to pay taxes because the Tax Act precluded the appellants' claim under the FFCA. Id. at 669-70. "[T]he Tax Act authorizes the Department of Revenue (DOR) 'to compensate persons providing information' regarding the failure to pay taxes" and "creates a mandatory administrative process when taxes are involved." Id. at 669 (quoting § 213.30(1), Fla. Stat. (2011)). "The FFCA, on the other hand, permits private actions where a person knowingly presents a false claim for payment, knowingly makes or uses a false record or statement, or knowingly conceals or improperly avoids an obligation to pay the State of Florida." Id. (citing §§ 68.082(1)-(2), .083(2)-(3), Fla. Stat. (2011)). The FFCA "affords a general ability to avail the judicial process for false claims." Id. In harmonizing these two acts under the precept that the specific controls over the general, the First District determined that the Tax Act precluded the FFCA claims at issue because the Tax Act, the specific statute, provides that it is the "sole means by which any person may seek or obtain any moneys" and "covers the narrow and specific realm of recovering 'moneys' for failure to comply with the tax laws" while "[t]he FFCA covers the broad and general realm of civil penalties and damages along with private remuneration." Id. at 670. Because the appellants sought compensation for the appellees' alleged failure to pay document stamp taxes, which are covered by the Tax Act, "the Tax Act is but an exemption to the general FFCA." As such, "[t]he Tax Act, mandating a DOR procedure, provides the exclusive means by which a person may obtains 'moneys.' " Id.

Similarly, the WCL narrowly and specifically addresses workers' compensation reimbursement matters while the FCCPA generally governs consumer debt collection practices. Of course this court can only address Ms. Davis's claims and not every potential FCCPA claim. In that respect, this court is not in a position to determine that any and every claim under section 559.77(1) of the FCCPA is precluded by section 440.13(11) of the WCL; nor could the circuit courts so determine. Rather, this court can determine only whether Ms. Davis's claims—as claims related to reimbursement, a fact she does not dispute—are precluded by section 440.13(11).[8] Section 440.13(11) clearly supersedes the FCCPA for claims related to reimbursement, precluding Ms. Davis's claims. Cf. Stevens, 127 So. 3d at 670; E & A Concrete v. Perry, 379 So. 2d 1015, 1016 (Fla. 1st DCA 1980). The majority's conclusion otherwise frustrates the stated intent of the WCL, creating a burden on society through unnecessary litigation. See Sam Rogers Enters. v. Williams, 401 So. 2d 1388, 1390-91 (Fla. 1st DCA 1981).

Because section 440.13(11)(c) plainly and unambiguously grants exclusive jurisdiction to the Department with regard to any matters concerning reimbursement in the workers' compensation context and Ms. Davis has not argued here that her claims do not concern reimbursement, there is no need for further analysis. See State v. Peraza, 259 So. 3d 728, 731 (Fla. 2018). I recognize, however, that even under a plain language analysis consideration of related statutes may be necessary to determine whether there exists an ambiguity not otherwise evident on the face of the statute at issue. See id. at 732. "This is true because '[w]here possible,

---

[8]Ms. Davis does not distinguish between her FCCPA claims so as to argue that her section 559.72(5) claim may not concern reimbursement.

- 23 -

courts must give effect to all statutory provisions and construe related statutory provisions in harmony with one another.' " Id. (alteration in original) (quoting M.W. v. Davis, 756 So. 2d 90, 101 (Fla. 2000)). To the extent that such consideration is necessary in this case, it is apparent that giving effect to the related statutory provisions of the WCL further supports affirmance. Section 440.13(13)(a) states that "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter." See also § 440.13(3)(g) ("The employee is not liable for payment for medical treatment or services provided pursuant to this section except as otherwise provided in this section."). Section 440.13(11)(a) provides that "[t]he department may investigate health care providers to determine whether providers are complying with this chapter and with rules adopted by the department" and to determine "whether providers are engaging in improper billing practices." And if the Department determines that a health care provider has engaged in improper billing practices or has otherwise failed to comply with chapter 440 and the rules of the Department, the health care provider may have to forfeit payment from the carrier or face penalties as set forth in section 440.13(8).[9] § 440.13(11)(a). As referenced in section 440.13(11)(a), through the authority to administer the WCL, administrative rules have been promogulated. See generally Fla. Admin. Code R. 69L-34. Rule 69L-34.001(6) defines "[v]iolation" as "a Provider's non-compliance with Chapter 440, F.S., and Division rules, which shall include . . . collecting or receiving payment from an injured worker." See Fla. Admin. Code R. 69L-34.001(2) (defining "Division" to mean

---

[9]The fact that Sheridan and Labcorp could face penalties under chapter 440 belies Ms. Davis's argument that in claiming the circuit courts lack subject matter jurisdiction over her claims they are attempting to "evade liability."

- 24 -

"The Department of Financial Services Division of Workers' Compensation"); see also Fla. Admin. Code R. 69L-34.003(4)(i) ("Supportive documentation of a specific violation may include . . . [c]opies of collection letters sent to the injured worker from the Provider or a collection agent acting on behalf of the Provider, seeking payment for covered medical services authorized by the Carrier."). Reading these sections of the statutes and rules together leads to the singular conclusion that the legislature intended for the Department to police the practices of workers' compensation health care providers, serving as the exclusive authority for imposing penalties when violations occur, including violations involving collection practices. The legislature, through the statutory language and by giving the Department the power to promulgate rules, has "plainly laid out . . . the only remedies it conceived for those occasions when" health care providers seek reimbursement from an injured employee who has received treatment for work-related injuries under his or her workers' compensation benefits. Cf. Plantation Gen. Hosp. Ltd. P'ship v. Horowitz, 895 So. 2d 484, 487 (Fla. 4th DCA 2005). And "[a]bsent an indication of legislative intent to create a private cause of action for a violation of [section 440.13], such a remedy may not be judicially engrafted onto the FCCPA." See Ramos v. CACH, LLC, 183 So. 3d 1149, 1152 (Fla. 5th DCA 2015) (quoting Thomas v. Commercial Recovery Sys., Inc., No. 8:07-cv-1104-T-23MAP, 2008 WL 5246296, at *4 (M.D. Fla. Dec. 16, 2008)). "Had the Florida legislature intended to enact a private right of action for violating [section 440.13], it could have done so, either by explicitly including language authorizing a private right of action in the statute, or by referencing [chapter 440] in [section] 559.72." See id. (quoting Wright v. Dyck–O'Neal, Inc., No. 2:15-cv-249-FtM-38MRM, 2015 WL 6560444, at *2 (M.D. Fla. Oct. 27, 2015)).

The majority makes much ado about the dictionary definitions of "reimbursement" and "collection." But the majority fails to recognize not only that the WCL is the specific law governing Ms. Davis's claims but that the distinction between reimbursement and collection is relevant only when the person seeking to collect is not also the person entitled to reimbursement. The majority also fails to recognize that the "debt" sought to be collected or reimbursed is the same medical payment. See, e.g., § 440.13(1)(q) (stating that reimbursement disputes concern "payment for medical treatment"); Fla. Admin. Code R. 69L-34.003(4)(i) (stating that collection letters sent to the injured employee by or on behalf of the health care provider "seeking payment for covered medical services" may be submitted in support of an allegation that a health care provider has failed to comply with the WCL). Sheridan and Labcorp provided medical treatment to Ms. Davis for her work-related injuries under her workers' compensation benefits and are seeking to collect payment for that treatment; they are seeking reimbursement. That Sheridan and Labcorp have sought payment from Ms. Davis rather than her compensation carrier does not render the WCL inapplicable, and in fact, as set forth above, chapter 440 and the Florida Administrative Code specifically contemplate the consequences a provider may face when seeking to collect payment from an injured employee.

In any event, Ms. Davis has not argued that the ordinary meanings of the terms reimbursement and collection dictate the resolution of this case; nor she has argued that her claims cannot be "matters concerning reimbursement" or that the FCCPA is the more specific of the two laws as concluded by the majority. These are arguments only of the majority's creation. Cf. Roop v. State, 228 So. 3d 633, 642 (Fla.

- 26 -

2d DCA 2017) (explaining that in reaching the opposing conclusion regarding the issue on appeal—whether the portion of the 911 call concerning identity was properly admitted as an exited utterance—the dissenting opinion relied on an argument not presented "for our decision because [the appellant] ha[d] not made the argument anywhere in his brief"); I.R.C. v. State, 968 So. 2d 583, 587-88 (Fla. 2d DCA 2007) (explaining that in reaching the opposing conclusion regarding the issue on appeal—whether the consent to search was voluntary—the dissenting opinion improperly relied on an argument not presented by the appellant, namely, that because the consent to search was obtained during an unlawful detention the consent is tainted and therefore deemed involuntary).[10] Ms. Davis instead argues that the FCCPA does not contain clear exceptions or exclusions for actions predicated upon the unlawful collection practices of a health care provider for medical debts under the WCL and that none of the provisions in the WCL usurp the circuit court's jurisdiction over her claims. As to the latter part of the argument, Ms. Davis asserts that Sheridan and Labcorp's contention that the Department has exclusive jurisdiction over her claims pursuant to section 440.13(11)(c) "is belied by the plain language of Section 440.13(1)(q)," which defines "reimbursement dispute" as "between a medical provider and a carrier." The majority contends that the proper interpretation of section 440.13(11)(c) "is at the heart of [Ms.] Davis's appeal," and yet Ms. Davis devoted a mere four sentences to section 440.13(11)(c) in her initial brief. Ms. Davis argues for the first time in her reply brief that her claims do not concern reimbursement and even then does not resort to the

_____

[10]The majority has misstated my position with regard to preservation. I am not asserting that the majority is resolving an issue that was not raised on appeal. Rather, it is my position that in resolving the issue raised on appeal the majority relies on arguments that were not presented to this court by Ms. Davis.

- 27 -

dictionary definitions of the terms in support of her assertion. Similarly, Ms. Davis does not contend that the WCL is ambiguous. Rather, relying on the proposition that there is no need to resort to statutory construction where a statute is unambiguous, Ms. Davis argues that there is no need to look beyond the plain language of either the FCCPA or the WCL. She even contends that "[t]here must be a hopeless inconsistency before the rules of construction are applied to defeat the plain language of one of the statutes" and that in this case no such inconsistency exists based on the plain language of the FCCPA and the WCL.

The majority's determination that we should reverse on grounds not argued by an appellant is "at odds with the structure of the appellate process which requires that a reviewing court ordinarily reverse only on the basis of the specific arguments presented by the appellant." Roop, 228 So. 3d at 642 (quoting I.R.C. v. State, 968 So. 2d 583, 588 (Fla. 2d DCA 2007)). By reversing on the grounds explained in the majority, we have granted relief on unraised arguments and exceeded our powers of review. See id. ("Since this argument has not been presented to us as a ground for reversal, we ought not to be reversing because of it."). Contrary to the majority's assertion, it is not this court's function to correctly resolve the issue before us even if doing so requires us to reverse based on an unraised argument; this court simply cannot create arguments for a party in order to reach its desired result when it deems the arguments actually raised to be unpersuasive. See Advanced Chiropractic & Rehab. Ctr. Corp. v. United Auto. Ins. Co., 103 So. 3d 866, 869 (Fla. 4th DCA 2012) ("The tipsy coachman doctrine does not permit a reviewing court to reverse on an unpreserved and unargued basis."). An argument for reversal must be both specifically

preserved in the circuit court and specifically raised and briefed in order for the appellate court to consider it.  See D.H. v. Adept Cmty. Servs., Inc., 271 So. 3d 870, 888 (Fla. 2018) (Canady, C.J., dissenting) ("This requirement of specific argument and briefing is one of the most important concepts of the appellate process.  Indeed, it is not the role of the appellate court to act as standby counsel for the parties.").  "[A]ny arguments not expressly included" in the brief are waived.  See Simmons v. State, 934 So. 2d 1100, 1117 n.14 (Fla. 2006).  It is not this court's role to rebrief an appeal; "[t]o take this step would require us to depart from our role as a neutral tribunal and to become an advocate by developing arguments that the [appellant]—for whatever reason—has chosen not to make."  Manatee Cty. Sch. Bd. v. NationsRent, Inc., 989 So. 2d 23, 25 (Fla. 2d DCA 2008); accord Polyglycoat Corp. v. Hirsch Distribs., Inc., 442 So. 2d 958, 960 (Fla. 4th DCA 1983) ("This Court will not depart from its dispassionate role and become an advocate by second guessing counsel and advancing for him theories and defenses which counsel either intentionally or unintentionally has chosen not to mention.  It is the duty of counsel to prepare appellate briefs so as to acquaint the Court with the material facts, the points of law involved, and the legal arguments supporting the positions of the respective parties.  When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy.  Again, it is not the function of the Court to rebrief an appeal." (citations omitted)).  "Moreover, it is only logical to require an argument to specifically be raised.  Otherwise, the appellee 'must not only respond to the specific reasons for reversal advanced by the [appellant] but also anticipate and respond to other reasons for reversal that may be advanced by the reviewing court.' "

<u>D.H.</u>, 271 So. 3d at 888 (Canady, C.J., dissenting) (alteration in original) (quoting <u>I.R.C.</u>, 968 So. 2d at 588).

In sum, based on the unambiguous language of the FCCPA and the WCL I believe that the circuit courts correctly determined that they lacked subject matter jurisdiction over Ms. Davis's claims. Moreover, it is inappropriate for this court to theorize about what Ms. Davis might have argued, successfully or not, below and on appeal. It is Ms. Davis's "duty to make error clearly appear," <u>see</u> <u>Manatee Cty. Sch. Bd.</u>, 989 So. 2d at 25, and in my opinion, she has failed to do so. Accordingly, I would affirm the orders on appeal.